FOSTER v CONE-BLANCHARD MACHINE COMPANY

Docket No. 187389. Submitted October 9, 1996, at Detroit. Decided January 7, 1997, at 9:05 A.M. Leave to appeal sought.

Evia I. Foster brought an action in the Lenawee Circuit Court against Cone-Blanchard Machine Company and Seven Ranges, Inc., alleging products liability and a failure to warn regarding alleged defects in a Conomatic feed screw machine after she was injured while operating the machine as an employee of Seven Ranges. The plaintiff alleged that Cone-Blanchard was liable as the legal successor of Cone Automatic Machine Company, Inc. (Cone I), the company that designed and manufactured the machine that injured the plaintiff. Cone-Blanchard argued that it was not the successor of Cone I and sought summary disposition. The court, Harvey A. Koselka, J., granted summary disposition for Cone-Blanchard, finding that Cone-Blanchard was not a successor corporation of Cone I. The plaintiff appealed.

The Court of Appeals *held*:

The trial court erred in granting summary disposition for Cone-Blanchard with regard to the products liability claim and the claim of breach of duty to warn.

1. Questions of fact were raised regarding whether Cone-Blanchard was the successor corporation of Cone I and whether there was a continuity of enterprise between Cone I and Cone-Blanchard. The plaintiff established a prima facie case of continuation of corporate responsibility for products liability against Cone-Blanchard.

2. Under the circumstances, where the evidence showed that Cone-Blanchard was actually aware of the alleged defect in the machine and had the means of warning customers who purchased such machines from Cone I, the trial court erred in granting summary disposition for Cone-Blanchard with regard to the claim of breach of duty to warn.

Reversed and remanded.

1. CORPORATIONS — SALE OF ASSETS — ASSUMPTION OF LIABILITIES.

The sale or transfer by a corporation of all its assets to another corporation generally does not bring with it liability for the liquidated

or unliquidated debts, claims, or liabilities of the selling corporation.

2. CORPORATIONS — SALE OF ASSETS — ASSUMPTION OF LIABILITIES.

The general rule is that if one corporation purchases the assets of another and pays a fair consideration therefor, no liability for the debts of the selling corporation exists in the absence of fraud or agreement to assume the debts; however, the purchaser may be held liable for the debts of the seller where: there is an express or implied assumption of liability, the transaction amounts to a consolidation or merger; the transaction was fraudulent, some of the elements of a purchase in good faith were lacking, the transfer was without consideration and the creditors of the transferor were not provided for, or the transferee corporation was a mere continuation or reincarnation of the old corporation.

3. PRODUCTS LIABILITY — CORPORATIONS — SALE OF ASSETS — ASSUMPTION OF LIABILITIES.

Products liability may attach to a corporation that acquires the manufacturer of the product where the totality of the acquisition demonstrates a basic continuity of the enterprise between the manufacturer and the acquiring corporation, under these guidelines: there is a continuity of management, personnel, physical location, assets, and general business operations of the selling corporation; the selling corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation; and the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation.

4. PRODUCTS LIABILITY — CORPORATIONS — SALE OF ASSETS — DUTY TO WARN.

A successor corporation may acquire an independent duty to warn where defects in a predecessor's products come to its attention; while succession alone does not impose a duty to warn of recently discovered defects, liability is imposed on a successor corporation for failure to warn of defects in products manufactured by its predecessor where some control over the products is given to the successor, as in servicing, or the successor becomes aware of a defect in the product, causing an assumption of liability by the successor for injuries thereafter caused by that product.

*Baker, Durst, Nelson, Benz & Baldwin* (by *Gary R. Baldwin*), for the plaintiff.

*Sullivan, Ward, Bone, Tyler & Asher, P.C.* (by *Thomas M. Slavin*), for Cone-Blanchard Machine Company.

Before: MICHAEL J. KELLY, P.J., and HOOD and H. D. SOET*, JJ.

MICHAEL J. KELLY, P.J. In this products liability action, plaintiff appeals as of right from an order granting summary disposition for defendant-appellee, Cone-Blanchard Machine Company (hereinafter referred to as Cone-Blanchard). We reverse.

On March 24, 1994, plaintiff, an employee of defendant Seven Ranges, Inc., was engaged in operating a Conomatic feed screw machine. While she was in the process of shoveling metal shavings from the discharge bin of the machine, her hair, which was gathered on top of her head, became ensnarled in the rapidly spinning and unguarded rod being processed by the Conomatic feed screw machine. Plaintiff's hair and scalp were torn from her head.

Thereafter, plaintiff filed a complaint against Cone-Blanchard and Seven Ranges. Plaintiff alleged that Cone-Blanchard was liable as the legal successor of Cone Automatic Machine Company, Inc. (hereinafter referred to as Cone I), the company which designed and manufactured the Conomatic machine. Specifically, plaintiff claimed that Cone-Blanchard was liable for plaintiff's injuries because the feed screw machine contained no emergency shutoff button or other safety devices designed to prevent injuries like that suffered by plaintiff. In essence, plaintiff made a claim of products liability, alleging a design or manu-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

facturing defect. In addition, plaintiff alleged breach of warranty of fitness for intended purposes and breach of implied warranty of merchantability. Finally, plaintiff alleged that Cone-Blanchard failed to warn the users of a known or reasonably suspected danger associated with the operation of the Conomatic feed screw machine.

Cone-Blanchard filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that Cone-Blanchard was neither the manufacturer of the machine nor a successor corporation of the actual manufacturer, Cone I. Cone-Blanchard argued that there was no continuity of enterprise between Cone I and Cone-Blanchard that would support imposition of successor liability. Cone-Blanchard asserted that Cone I was purchased by Pneumo Dynamics Corp., and had been defunct for approximately nine years before Cone-Blanchard came into existence. Cone-Blanchard argued that because it was not the successor corporation of Pneumo Dynamics, the company that purchased Cone I, it could not be a successor of Cone I.

All the stock of Cone I was acquired by Pneumo Dynamics in 1963. Cone I then terminated its operations and was dissolved in 1963. Pneumo Dynamics formed Cone Automatic Machine Co., Inc. (hereinafter referred to as Cone II), for the sole purpose of holding the Cone name, but the corporation was inactive, with no employees, assets, or place of business. From 1963 to 1972, Pneumo Dynamics operated Pneumo Dynamics Machine Tool Group (hereinafter referred to as PDMTG), which included assets of the dissolved Cone I, as well as assets from two other machine companies. PDMTG continued to manufacture

the Conomatic line of machines. In 1972, Cone-Blanchard purchased the assets of PDMTG and the stock of Cone II from Pneumo Dynamics. Pneumo Dynamics continued as an active viable corporation. Thereafter, Cone-Blanchard took over the manufacture of Conomatic machines.

In response to Cone-Blanchard's motion for summary disposition, plaintiff argued that Cone-Blanchard was in fact and law the successor of Cone I, the manufacturer of the defective machine, and therefore Cone-Blanchard was liable for plaintiff's injuries. Plaintiff claimed that because Cone-Blanchard acquired the assets of Pneumo Dynamics, Cone-Blanchard was the successor of Pneumo Dynamics and in the chain of successorship with regard to Cone I. Plaintiff also noted that Cone-Blanchard continued to manufacture Conomatic screw machines after the purchase of Pneumo Dynamic's assets. Plaintiff indicated that Cone-Blanchard retained the name of the manufacturing company "Cone" and continued to manufacture under the trade name of "Conomatic," thereby evincing a continuity of enterprise. Plaintiff also contended that Cone-Blanchard was liable under the independent claim of breach of duty to warn.

The trial court determined that Cone-Blanchard was not a successor corporation of Cone I and granted Cone-Blanchard's motion for summary disposition. Plaintiff's subsequent motion for reconsideration was denied.

On appeal, plaintiff argues that the trial court erred in granting Cone-Blanchard summary disposition of the issue whether Cone-Blanchard was the successor corporation of Cone I for purposes of potential liabil-

ity for plaintiff's injury. Plaintiff claims that a question of fact was raised regarding whether Cone-Blanchard was the successor corporation of Cone I or Pneumo Dynamics. We agree.

A motion for summary disposition filed under MCR 2.116(C)(10) tests whether there is factual support for the plaintiff's claim. In ruling on a motion for sum-' mary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence presented. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994); *Michigan Mutual Ins Co v Dowell*, 204 Mich App 81, 86; 514 NW2d 185 (1994). The court is not permitted to assess credibility or to determine facts. *Skinner, supra*. Giving the benefit of a reasonable doubt to the opposing party, the trial court must determine whether a record might be developed that would leave open an issue on which reasonable minds could differ. Summary disposition may be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

Under the traditional corporate analysis, the sale or transfer of assets by one corporation to another did not bring with it assumption of liability for the liquidated or unliquidated debts, claims, or other liabilities of the selling corporation. *Fenton Area Public Schools v Sorensen-Gross Construction Co*, 124 Mich App 631, 641; 335 NW2d 221 (1983); *Pelc v Bendix Machine Tool Corp*, 111 Mich App 343, 351; 314 NW2d 614 (1981). The applicable law and limited exceptions have been summarized as follows:

"The general rule is that, as in the instant case[:]

" '[I]f one corporation purchases the assets of another and pays a fair consideration therefor, no liability for the debts of the selling corporation exists in the absence of fraud or agreement to assume the debts.

\* \* \*

" 'There are certain instances, however, in which the purchaser or transferee may become liable for the obligations of the transferor corporation. The transferee may be held liable for the debts of the transferor corporation: (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.' " [*Pelc, supra* at 351-352, quoting *Turner v Bituminous Casualty Co*, 397 Mich 406, 417, n 3; 244; 244 NW2d 873 (1976). Citations omitted.]

However, the *Pelc* Court noted that in *Turner, supra* at 420, the Supreme Court "rejected the narrow strictures of traditional corporate successor nonliability as inapplicable to a products liability case." *Pelc, supra* at 352. Instead, the *Turner* Court adopted the rule of "continuity of enterprise" for products liability cases that arise after corporate transfers. Under the continuity of enterprise rule, liability for a defective product may attach to a corporation that acquires the manufacturing company when the totality of the acquisition demonstrates a basic continuity of the enterprise between the manufacturer and the acquiring corporation. *Id.* The following *Turner* guidelines have been established for determining whether there is a continuity of enterprise:

"(1) There is a continuity of management, personnel, physical location, assets, and general business operations of the selling corporation;

"(2) The selling corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible;

"(3) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations to the selling corporation; and

"(4) The purchasing corporation holds itself out to the world as the effective continuation of the seller corporation." [*Sorensen-Gross*, *supra* at 642, quoting *Pelc*, *supra* at 352-353, citing *Turner*, *supra*.]

Applying the *Turner* guidelines to the instant case, we believe a question of fact was raised regarding whether there was a continuity of enterprise between Cone I and Cone-Blanchard. The evidence indicates that almost immediately after selling it's assets to Pneumo Dynamics, Cone I ceased to exist. Pneumo Dynamics formed Cone II for the sole purpose of holding the Cone name, but the corporation was inactive with no employees, assets, or place of business. PDMTG, a company owned by Pneumo Dynamics, continued to manufacture the Conomatic line of machines originally manufactured by Cone I. Subsequently, Cone-Blanchard purchased the assets of PDMTG and the stock of Cone II from Pneumo Dynamics. Thereafter, Cone-Blanchard took over the manufacture of Conomatic machines. Cone-Blanchard retained the "Cone" name, continued the general business operations of Cone I by continuing to manufacture the Conomatic screw machines, continued to manufacture the machines under the trade name of "Conomatic," and continued to manufacture the

machines from the same location and using some of the same employees as Cone I. Under these circumstances, it could be said that Cone-Blanchard essentially held itself out to the world as the effective continuation of Cone I. *Turner, supra; Sorensen-Gross, supra.*

The thrust of the cited authorities is that where a corporation reaps the benefits of the predecessor corporation it should also bear the burdens of continuity. In other words, liability should continue because the corporate body itself has essentially survived. Moreover, the public policy underlying strict products liability is to protect the injured party by placing the burden on the party most able to bear the loss by spreading the risk. *Turner, supra* at 424-425.

In sum, under the circumstances presented in this case, to say Cone I is a corporate stranger of Cone-Blanchard, and vice versa, is to honor form over substance. *Turner, supra* at 426. After giving the benefit of a reasonable doubt to plaintiff, we believe that plaintiff has established a prima facie case of continuation of corporate responsibility for products liability against Cone-Blanchard. Hence, we reverse the order granting summary disposition for Cone-Blanchard with regard to this issue and remand this matter to the trial court for further proceedings consistent with this opinion.

Independent of the claim of successor liability, plaintiff also argues that the trial court improperly dismissed plaintiff's claim that Cone-Blanchard failed to warn of the defects in the Conomatic feed screw machine. This Court in *Pelc, supra* at 358, indicated as follows:

In *Powers v Baker-Perkins, Inc,* 92 Mich App 645; 285 NW2d 402 (1979), lv den 409 Mich 851 (1980), this Court adopted the position that under some circumstances there can be a cause of action based on a successor's breach of the duty to warn. This cause of action is independent of claims based on the theory of successor liability. *Id.,* 661-663; *Wilson v Fare Well Corp,* 140 NJ Super 476, 491; 356 A2d 458 (1976). *Powers, supra,* 662-663, would impose liability on a successor corporation for failure to warn of defects in products manufactured by its predecessor "when some control over the product is given to the successor, as in servicing, or the successor becomes aware of a defect in the product, causing an assumption of liability by the successor for injuries thereafter caused by that product." See also *Shane v Hobam, Inc,* 332 F Supp 526 (ED Pa, 1971).

Although there is no evidence to indicate that Cone-Blanchard succeeded to Cone I's service contracts, evidence was presented to indicate that Cone-Blanchard had actual knowledge of the alleged defect in the Conomatic feed screw machines. In fact, in 1982 a strikingly similar action was instituted against Cone-Blanchard by a plaintiff who, while working on a Conomatic screw machine, suffered injuries much like those suffered by the plaintiff in the instant case.[1] Clearly, Cone-Blanchard was aware of the alleged defect in the machines. Moreover, it appears that Cone-Blanchard had access to the customer lists kept by Cone I. Additionally, plaintiff presented evidence that a Cone-Blanchard business card was in the possession of plaintiff's employer. Under these circumstances, where the evidence showed that Cone-Blanchard was actually aware of the alleged defect in the machine and had the means of warning customers

---

[1] See *Flaugher v Cone Automatic Machine Co,* 30 Ohio St 3d 60; 507 NE2d 331 (1987).

who purchased such machines from Cone I, the trial court erred in granting summary disposition with regard to plaintiff's claim of breach of duty to warn.

Reversed and remanded for proceedings consistent with this opinion.