CORNERSTONE INVESTMENTS, INC v CANNON TOWNSHIP

Docket No. 197297. Submitted October 8, 1997, at Grand Rapids. Decided July 31, 1998, at 9:00 A.M. In lieu of granting leave to appeal, the judgment of the Court of Appeals is reversed for the reasons stated in the partial dissent. The case is remanded to the Court of Appeals. 459 Mich 905.

Cornerstone Investments, Inc., brought an action in the Kent Circuit Court against Cannon Township and others, seeking declaratory, injunctive, and other relief with respect to the township's planned unit development (PUD) rezoning application and review process and escrow application policy. The plaintiff alleged that the process and policy were structured in a manner that allowed the township planning commission and its agents unfettered discretion in determining an applicant's costs associated with an application for PUD rezoning. The policy was designed to shift the cost of processing applications for Cannon Township Planning Commission action from the township to the applicants. The policy provided that a basic application fee would cover the costs associated with regular commission meetings and providing legal notice for a public hearing. All other expenses incurred in processing an application were to be paid directly from an escrow account. These expenses could include, but were not limited to, costs associated with subcommittee meetings, additional public hearings, and review by the township attorney, planner, and engineer. Each applicant was required to deposit $1,000 in an escrow account, and additional escrow funds could be requested by the commission at its discretion. After all expenses of an application were covered, excess escrow funds deposited by the applicant would be returned without interest. No building permits or final township board approval would be granted until all escrow funds necessary to cover expenses were paid in full. The court, Dennis B. Leiber, J., granted the defendants' motion for summary disposition, finding that the defendants were authorized to adopt the disputed process and policy and that the escrow policy was fair and reasonable. The plaintiff appealed.

The Court of Appeals *held*:

1. The township's escrow policy is not authorized by any statutory or constitutional grant of power and is invalid.

2. Section 16c of the Township Rural Zoning Act (TRZA), MCL 125.286c; MSA 5.2963(16c), authorizes townships to establish conditions for PUD eligibility and requirements for PUD approval. Section 25 of the act, MCL 125.295; MSA 5.2963(25), authorizes townships to charge reasonable fees for zoning permits as a condition of granting authority to a landowner to locate buildings within a particular zoning district, and the charging of such fees serves the purposes of obtaining advance information about the proposed land uses and defraying the costs of the enforcement of the TRZA, which includes the PUD review process addressed in § 16c.

3. Section 25 of the TRZA allows a township to raise revenue to fund actions taken pursuant to the act by charging reasonable fees for zoning permits and by levying a property tax. The term "fees," as used in § 25, means a fixed or established charge and does not encompass the open-ended escrow deposits the township requires under its escrow application policy.

4. The order granting summary disposition for the defendants must be reversed and the matter must be remanded for entry of an order granting summary disposition in favor of the plaintiff. The trial court, on remand, must consider the further relief requested by the plaintiff.

Reversed and remanded.

WHITE, P.J., dissenting in part, stated that the township has statutory authority to require the payment of fees to defray the costs of processing applications for the type of rezoning that was involved here and that the fees charged by the defendant were "fees" as contemplated by the TRZA even though they were not fixed at a sum certain. A charge does not have to be fixed at a sum certain to be a fee. A charge assessed for certain privileges or services relating to a zoning permit application that is fixed by reference to established policy and procedure can be a fee and is not precluded from being a fee simply because the amount depends on the circumstances of each application. The court's finding that the fee was reasonable should be affirmed.

1. TOWNSHIPS — ZONING — PLANNED UNIT DEVELOPMENTS.

The Township Rural Zoning Act authorizes townships to establish conditions for planned unit development eligibility and requirements for their approval; the act authorizes townships to charge a reasonable fee for zoning permits as a condition of granting authority to a landowner to locate buildings within a particular zoning district; the charging of such fees serves the purposes of obtaining advance information about the proposed land uses and defraying the costs of the enforcement of the act, including the review of

proposed planned unit developments (MCL 125.286c[4][b], 125.295; MSA 5.2963[16c][4][b], 5.2963[25]).

2. TOWNSHIPS — ZONING — TOWNSHIP RURAL ZONING ACT — FEES.

A township may charge reasonable fees for zoning permits and levy a property tax to raise revenue to fund actions taken pursuant to the Township Rural Zoning Act; the word "fees" as used in the act means a fixed or established charge (MCL 125.295; MSA 5.2963[25]).

*Rhoades, McKee, Boer, Goodrich & Titta* (by *Arthur C. Spalding*), for the plaintiff.

*Mika, Meyers, Beckett & Jones, P.L.C.* (by *John T. Sperla* and *Daniel C. Brubaker*), for the defendants.

Amici Curiae:

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *John H. Bauckham* and *Roxanne C. Seeber*), for Michigan Townships Association.

*Law Firm of Thomas C. Shearer, P.C.* (by *Thomas C. Shearer*), for Greater Grand Rapids Home Builders Association.

*McClelland & Anderson, L.L.P.* (by *Gregory L. McClelland* and *Deborah A. Lee*), for Michigan Association of Home Builders.

Before: WHITE, P.J., and CAVANAGH and REILLY, JJ.

REILLY, J. Plaintiff appeals as of right from an order denying its motion for summary disposition and granting defendants' motion for summary disposition. We reverse and remand.

This case arises out of plaintiff's application to have a parcel of its property in defendant Cannon Township rezoned as a planned unit development (PUD) district to allow for the development of seven-

teen single-family condominium units to be named, collectively, Egypt Valley Woods. The facts are essentially undisputed. In December 1991, defendant Cannon Township Planning Commission adopted, and the township board approved, an "Escrow Application Policy" designed to shift the cost of processing applications for commission action from the township to the applicants. The policy provided that a basic application fee would cover the costs associated with regular commission meetings and providing legal notice for a public hearing. All other expenses incurred in processing an application were to be paid directly from an escrow account. These expenses could include, but were not limited to, costs associated with subcommittee meetings, additional public hearings, and review by the township attorney, planner, and engineer. Under the policy, the initial escrow deposit was $1,000. Additional escrow funds could be requested by the commission at its discretion. The policy further provided that, after all the expenses were covered, any excess funds in the escrow account would be returned to the applicant without interest. Finally, no building permit or final township board approval would be granted until all escrow funds necessary to cover expenses were paid in full. On July 27, 1993, the township board adopted a "PUD Rezoning Application and Review Process" incorporating the 1991 Escrow Application Policy.

On October 20, 1993, plaintiff submitted an application to the commission for a zoning ordinance amendment with respect to the Egypt Valley Woods property, which plaintiff sought to have rezoned from "agricultural and suburban residential" to a PUD district. Plaintiff paid a $350 application fee and made a

$1,000 escrow deposit. Plaintiff made the escrow deposit under protest, contesting the legality of defendants' Escrow Application Policy. Pursuant to the township's ordinance concerning PUD districts, the establishment of a PUD district was subject to several considerations regarding the effect the proposed PUD district would have on adjacent land uses and public safety. An applicant was required to submit a PUD plan containing, among other things, a map showing all proposed land uses and drawings of proposed buildings. Initially, the commission determined that plaintiff's PUD plan was insufficient. However, after various amendments were made to the development plan, and additional deposits were made to the escrow account, the commission eventually approved plaintiff's application. On June 13, 1994, the township adopted PUD ordinance 94-8Z, which rezoned the Egypt Valley Woods property from agricultural and suburban residential to a PUD district. Subsequently, plaintiff was notified that it owed the township additional funds for the application. When plaintiff refused to pay, the township informed plaintiff that no building permit would be issued for Egypt Valley Woods until the unpaid deposit was remitted.[1]

Plaintiff then filed a complaint requesting (1) a declaratory judgment that the escrow policy is illegal and unenforceable, (2) an injunction enjoining defendants from enforcing the escrow policy and from withholding plaintiff's building permit pursuant to the policy, and (3) restitution of the escrow deposit and payments, interest, and attorney fees.

---

[1] Defendant Andy Sparks is the township's building inspector. As such, he is responsible for issuing building permits in the township.

After the completion of discovery, plaintiff and
defendants each filed motions for summary disposi-
tion pursuant to MCR 2.116(C)(10). The trial court, in
granting defendants' motion and denying plaintiff's
motion, ruled (1) that the township was authorized to
adopt the PUD Rezoning Application and Review Pro-
cess and the Escrow Application Policy, and (2) that
the escrow policy used by defendants was fair and
reasonable.

On appeal, plaintiff makes several arguments chal-
lenging the trial court's decision to grant defendants'
motion for summary disposition. We review de novo a
trial court's decision to grant a motion for summary
disposition. *Pinckney Community Schools v Conti-
nental Casualty Co*, 213 Mich App 521, 525; 540
NW2d 748 (1995). Summary disposition may be
granted under MCR 2.116(C)(10) when there is no
genuine issue of material fact and the moving party is
entitled to judgment as a matter of law. *Foster v
Cone-Blanchard Machine Co*, 221 Mich App 43, 48;
560 NW2d 664 (1997).

First, plaintiff argues that the township's escrow
policy is invalid because it is not authorized by any
statutory or constitutional grant of power. We agree.
Townships have no inherent powers, but have only
those limited powers conferred on them by the Legis-
lature or by the state constitution. *Hanselman v
Wayne Co Concealed Weapon Licensing Bd*, 419 Mich
168, 187; 351 NW2d 544 (1984); *Detroit Edison Co v
Richmond Twp*, 150 Mich App 40, 47-48; 388 NW2d
296 (1986). In addition to the powers expressly
granted them, townships possess those powers neces-
sarily or fairly implied in or incident to their express
powers. See Const 1963, art 7, § 34; *Independence*

*Twp v Roy*, 12 Mich App 107, 109; 162 NW2d 339
(1968). Pursuant to Const 1963, art 7, § 34, the pow-
ers conferred upon townships are to be liberally con-
strued in their favor. *Natural Aggregates Corp v
Brighton Twp*, 213 Mich App 287, 294-295; 539 NW2d
761 (1995). The Township Rural Zoning Act (TRZA),
MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*, is the
basic enabling act granting townships the power to
pass zoning ordinances. *Detroit Edison, supra* at 48.
The TRZA gives township boards very broad and gen-
eral authority to zone "to promote public health,
safety, and welfare." MCL 125.271(1); MSA
5.2963(1)(1); *Delta Charter Twp v Dinolfo*, 419 Mich
253, 263; 351 NW2d 831 (1984); *Detroit Edison,
supra* at 49.

PUD districts are authorized under § 16c of the TRZA,
which provides that PUD regulations established by a
township must specify "[t]he conditions which create
planned unit development eligibility, the participants
in the review process, and the requirements and stan-
dards upon which applicants will be judged and
approval granted." MCL 125.286c(4)(b); MSA
5.2963(16c)(4)(b). While this language certainly
implies that townships are authorized to establish
"conditions" for PUD "eligibility" and "requirements"
for PUD "approval," it does not specifically address
funding for township actions or provide any express
authority for defendants' escrow policy. The permissi-
ble methods of funding township actions taken pursu-
ant to the TRZA are addressed in § 25 of the act:

> For the purpose of providing funds to carry out this act,
> the township board of an organized township may require
> the payment of *reasonable fees for zoning permits* as a
> condition to the granting of authority to erect, alter, or

locate dwellings, buildings, and structures, including tents and trailer coaches, within a zoning district established under this act, both for the purpose of obtaining advance information as to building operations, locations, and proposed uses, and for the purpose of defraying the cost, in whole or in part, of the enforcement of this act in the township, and if the board has incurred or expects to incur any expense of public funds in carrying out this act, shall, for that purpose, in addition to the revenues of the fees, levy a sufficient tax, in addition to other taxes now authorized by law, upon the real and personal property subject to taxation in the township, and the taxes shall be collected as other taxes are collected. When the taxes or fees are collected, they shall be applied to the payment of any indebtedness incurred by the township subject to this act, and to no other purpose. However, the taxes assessed, levied, and collected shall not cause the limit of taxes established by law to be exceeded. [MCL 125.295; MSA 5.2963(25) (emphasis added).]

Section 25 expressly authorizes townships to charge "reasonable fees for zoning permits" as a condition of granting authority to a landowner to locate buildings within a particular zoning district, and the charging of such fees serves the purposes of (1) obtaining advance information about the proposed land uses and (2) defraying the costs of the enforcement of the TRZA, which includes the PUD review process addressed in § 16c.

Plaintiff contends that the term "zoning permits," as used in § 25 of the TRZA, refers to the building permits, which a township may require before granting a landowner permission to build a particular structure. Accordingly, plaintiff argues that § 25 does not authorize the township's escrow policy, because the township charges an additional fee for building permits. Zoning regulations and building regulations are

distinct areas of law. See 7A McQuillin, Municipal Corporations (3d ed), § 24.504, p 91. The primary purpose of building permits is to obtain compliance with the rules governing the construction, use, and occupation of particular buildings. See MCL 125.1504; MSA 5.2949(4), MCL 125.1510(6); MSA 5.2949(10)(6); see also 9A McQuillin, Municipal Corporations (3d ed), § 26.200, pp 171-172. In contrast, zoning ordinances are a mechanism for regulating land use by geographic area. See *Gackler Land Co, Inc v Yankee Springs Twp*, 427 Mich 562, 574, n 2; 398 NW2d 393 (1986); *Frericks v Highland Twp*, 228 Mich App 575, 582; 579 NW2d 441 (1998); *Natural Aggregates, supra* at 298; see also MCL 125.271; MSA 5.2963(1). Because § 25 specifically authorizes "zoning permits" (as opposed to "building permits")[2] and speaks of a township granting authority to "locate" buildings, plaintiff's argument that the permits referred to in § 25 are really "building permits" is not well taken.

Nowhere in the TRZA is the term "zoning permit" statutorily defined. Unless defined in the statute, every word or phrase of a statute should be understood according to the common and approved usage of the language, taking into account the context in which the words are used. MCL 8.3a; MSA 2.212(1); *Yaldo v North Pointe Ins Co*, 217 Mich App 617, 621; 552 NW2d 657 (1996). When the words are not defined in the statute, a court may consult dictionary definitions. *Id. Webster's New Collegiate Dictionary* (1977) defines "permit," in part, as "a written warrant or license granted by one having authority." Here, the

---

[2] Before March 1, 1979, § 25 of the TRZA used the term "building permits." It was changed to "zoning permits" with the passage of 1978 PA 637.

goal of defendants' PUD Rezoning Application and Review Process is to obtain advance information about proposed land uses before deciding whether to grant approval for such uses, including the location of buildings. When the township board decides to approve a PUD application, it does so by amending the zoning ordinance. Because an amendment of the zoning ordinance made at the request of an applicant seeking PUD rezoning constitutes written permission to engage in a particular land use, the township is essentially granting a "zoning permit" when it so amends its zoning ordinance.

Although we are not persuaded by plaintiff's "zoning permit" argument, we nevertheless conclude that the township's method of funding its PUD Rezoning Application and Review Process oversteps its legislative grant of power. Section 25 of the TRZA specifically lists two methods a township may employ to raise revenue to fund actions taken pursuant to the TRZA. The first is by charging "reasonable fees for zoning permits," and the second is by levying a property tax. See MCL 125.295; MSA 5.2963(25). On the facts of this case, we need only address the first option. Our concern is whether the word "fees" encompasses the sort of open-ended escrow deposits the township requires under its Escrow Application Policy. Because the term "fee" is not defined in the TRZA, we again turn to dictionary definitions for help in understanding the common and approved usage. *Yaldo, supra* at 621. *Webster's New Collegiate Dictionary* (1977) defines "fee" as "a fixed charge." Similarly, Black's Law Dictionary (6th ed), citing *Fort Smith Gas Co v Wiseman*, 189 Ark 675; 74 SW2d 789 (1934), defines "fee," in part, as "[a] charge fixed by law for services

of public officers or for use of a privilege under control of government." Finally, the Michigan Supreme Court has explained, albeit in a different context, that a fee, understood in its usual and ordinary sense, "is usually a fixed charge, a prerequisite charged as a recompense for labor and trouble." *People v Goulding*, 275 Mich 353, 357; 266 NW 378 (1936). On the basis of the foregoing definitions, we construe the word "fees" as used in § 25 of the TRZA to mean a fixed or established charge.

Here, the township's Escrow Application Policy is structured to allow the commission and its agents unfettered discretion in determining the costs accumulated in association with each individual application for PUD rezoning. Under the township's policy, the cost of an application for PUD rezoning to any particular applicant is, essentially, whatever amount the commission deems to have been "necessary" *after* the application has already been processed. Accordingly, rather than charging an established amount, the township has created a system under which the ultimate price for the issuance of a zoning permit is inherently unpredictable. We conclude that this method of funding differs from that contemplated by the Legislature when it chose to expressly authorize the collection of "reasonable fees" in § 25 of the TRZA. Therefore, we hold that the township's Escrow Application Policy is not authorized by a statutory or constitutional grant of power.

Because we have concluded that the township's Escrow Application Policy is not authorized by the TRZA, we need not address plaintiff's argument that the township's escrow policy constitutes an illegal delegation of authority to administrative officials, or

its argument that the escrow policy was never adopted as part of the township's zoning ordinance.

We reverse and remand for entry of an order granting plaintiff's motion for summary disposition. The trial court shall consider the further relief requested by plaintiff. We do not retain jurisdiction.

CAVANAGH, J., concurred.

WHITE, P.J. (*concurring in part and dissenting in part*). I agree that the township has statutory authority to require the payment of fees to defray the costs of processing applications for rezoning such as that involved in the instant case. I respectfully dissent from the majority's conclusion that because the fees charged here were not fixed at a sum certain, they were not "fees" as contemplated by the statute. I would affirm the order of the circuit court.

While some dictionaries use the term "fixed charge" in defining the word "fee," that term is generally but one of several definitions of the word. Another definition is quoted by the majority from Black's Law Dictionary (6th ed), "[a] charge fixed by law for services of public officers or for use of a privilege under control of government." The second definition in Black's is "[a] recompense for an official or professional service or a charge or emolument or compensation for a particular act or service."[1] Ballantine's Law Dictionary does not include the term "fixed charge." *Webster's*

---

[1] The third definition in Black's includes the term "fixed charge": "A fixed charge or perquisite charged as recompense for labor; reward, compensation, or wage given to a person for performance of services or something done or to be done."

*Third New International Dictionary* includes as definitions "a fixed charge for admission (as to a museum)" and "a charge fixed by law or by an institution (as a university) for certain privileges or services." *People v Goulding*, 275 Mich 353, 357; 266 NW 378 (1936), relied on by the majority, simply stated that a fee "is *usually* a fixed charge, a prerequisite charged as a recompense for labor and trouble." (Emphasis added.)

I conclude that a charge does not have to be fixed at a sum certain to be a "fee." A charge assessed for certain privileges or services relating to a zoning permit application that is fixed by reference to established policy and procedure can be a fee and is not precluded from being a fee simply because the amount depends on the circumstances of each application.

The only express legislative limitations on the fee authorized by the Township Rural Zoning Act, MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*; is that it be for the purposes of obtaining advance information or defraying the cost of enforcing the act in the township and that it be reasonable. Here the circuit court found that the fee was reasonable. See *Flama Constr Corp v Franklin Twp*, 201 NJ Super 498; 493 A2d 587 (1985). There is no reason to suppose that the Legislature mandated a system where developers seeking approval of small planned unit developments would be required to pay a fee that is unreasonable in relation to their particular application, but reasonable in light of the average costs of processing and investigating all applications, including those related to the largest planned unit developments involving the great-

est amount of review and investigation. For the rea-
sons stated by the circuit court,[2] I would affirm.

------

[2] The circuit court concluded:

First, the escrow fee policy is fair and reasonable because it is
based on actual costs; that is, the actual consulting fee incurred by
the township in connection with the particular project. No addi-
tional municipal revenue is generated. Any remaining monies in the
account are returned to the developer at the conclusion of the
process.

Second, the escrow fee policy is fair and reasonable because
they are proportionate to the costs of the regulation itself.

[*Merrelli v St Clair Shores*, 355 Mich 575, 583, 584; 96 NW2d 144
(1959).]

Third, the escrow fee policy is fair and reasonable because it is
the developer who benefits from the consulting work rendering a
property capable of development, and resulting profit to the devel-
oper with no perceived necessary value to the existing
residence[sic].

Four [sic], the escrow fee policy is fair and reasonable because it
allows the developer a measure of control over the costs, provided
that the site plan and other preliminary work is properly done, so
that the need for review by outside consultants is minimized.

Fifth, the escrow fee policy is fair and reasonable because to
mandate a fixed fee in advance would require a township to create
out of vaccum [sic] an arbitrary amount with the disadvantage to
its residents of imposing an unforeseen shortfall requiring
increased taxes each year or, conversely, creating a windfall of rev-
enue contrary to the intent of the statute itself.

Moreover, the effect of a fixed fee on a developer is equally
apparent. It can create a windfall to the developer of a complex
project at the expense of one whose project is relatively simple and
straightforward.

*       *       *

Certainly, as has been argued and as the court has quoted and as
is apparent, to the extent that developer claims that a particular
escrow policy fee is unreasonable this Court is of the opinion, as is
noted in [*Flama Constr Corp v Franklin Twp*, 201 NJ Super 498,
503; 493 A2d 587 (1985)].

"All fees ultimately paid are subject to the requirement that they
be reasonable, and that determination is subject to review by the
courts."