CORNERSTONE INVESTMENTS, INC v CANNON TOWNSHIP
(ON REMAND)

Docket No. 197297. Submitted January 13, 1999, at Lansing. Decided
December 14, 1999, at 9:00 A.M.

Cornerstone Investments, Inc., brought an action in the Kent Circuit
Court against Cannon Township and others, seeking declaratory,
injunctive, and other relief with respect to the township's planned
unit development (PUD) rezoning application and review process
and escrow application policy. As a condition of the defendants'
processing and review of a PUD zoning application, the developer is
required to make an initial deposit in escrow and make additional
incremental deposits when required by the township planning com-
mission chairman at his discretion. The escrow is used to reim-
burse the township for expenses incurred in processing and
reviewing the application for compliance with the township's zon-
ing ordinance. The court, Dennis B. Leiber, J., granted summary
disposition for the defendants, ruling that the defendants were
authorized to adopt the disputed process and policy and that the
escrow policy was fair and reasonable. The Court of Appeals,
CAVANAGH and REILLY, JJ. (WHITE, P.J., dissenting in part), reversed
and remanded, holding that the escrow policy is not authorized by
any statute or the state constitution and therefore is invalid. 231
Mich App 1 (1998). The Supreme Court, in lieu of granting leave to
appeal to the defendants, reversed the judgment of the Court of
Appeals for the reasons stated in Judge White's partial dissent, i.e.,
that the escrow policy is authorized by the Township Rural Zoning
Act (TRZA), MCL 125.721 et seq.; MSA 5.2963(1) et seq., and that the
variable fee imposed under the escrow policy is reasonable. The
Supreme Court also remanded the case to the Court of Appeals for
consideration of those issues raised by the plaintiff that the Court
of Appeals did not consider. 459 Mich 905 (1998).

On remand, the Court of Appeals held:

1. The escrow policy does not constitute an illegal delegation of
authority to an administrative body and administrative officials
without definite standards or safeguards. The TRZA authorizes the
township to establish conditions for PUD eligibility, MCL
125.286c(4)(b); MSA 5.2963(16c)(4)(b), and to establish a review

and approval process, MCL 125.286c(2); MSA 5.2963(16c)(2). The PUD regulations of the township zoning ordinance meet the requirements of MCL 125.286c(4)(b); MSA 5.2963(16c)(4)(b) relative to setting conditions for PUD eligibility and procedures for application, review, and approval.

2. The fees charged in connection with the escrow policy satisfy legislative limitations on the fee authorized by the TRZA in that the fees are imposed for the purposes of obtaining advance information or defraying the cost of enforcing the act in the township and the fees are reasonable.

3. The escrow policy is not contrary to MCL 125.276; MSA 5.2963(6) and MCL 125.277a; MSA 5.2963(7a). These provisions, in providing that township zoning board members and planning experts are to be compensated from annual appropriations by the township board, do not require that professional fees incurred by a township in reviewing a PUD rezoning application must only be paid with funds annually appropriated by the township board.

4. The plaintiff's claim that the escrow policy is unenforceable because it was not adopted as part of the township's zoning ordinance is without merit. The TRZA does not require that fees for review of zoning applications be adopted by ordinance. In any event, the township's zoning ordinance provides that PUD rezoning applications be accompanied by a fee.

Affirmed.

TOWNSHIPS — ZONING — PLANNED UNIT DEVELOPMENTS.

The Township Rural Zoning Act authorizes a township to require an applicant for planned unit development rezoning to deposit in escrow funds from which the township is to be reimbursed for expenses incurred in processing and reviewing the application for compliance with the township's zoning ordinance; such escrowed fees must be for the purposes of obtaining advance information or defraying the cost of enforcing the act in the township and must be reasonable (MCL 125.286c[2], 125.286c[4][b], 125.295; MSA 5.2963[16c][2], 5.2963[16c][4][b], 5.2963[25]).

*Rhoades McKee, Boer, Goodrich & Titta* (by *Arthur C. Spalding*), for the plaintiff.

*Mika, Meyers, Beckett & Jones, P.L.C.* (by *John T. Sperla* and *Daniel C. Brubaker*), for the defendants.

Amici Curiae:

*Thomas C. Shearer,* for Greater Grand Rapids Home Builders Association.

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *John H. Bauckham* and *Roxanne C. Seeber*), for Michigan Townships Association.

*McClelland & Anderson, L.L.P.,* (by *Gregory L. McClelland* and *Deborah A. Lee*), for Michigan Association of Home Builders.

ON REMAND

Before: WHITE, P.J., and CAVANAGH and MARKEY,[1] JJ.

WHITE, P.J. This case is before us on remand from the Supreme Court. 459 Mich 905 (1998). Plaintiff challenged defendants' Escrow Application Policy, which required, as a precondition to defendants' review and processing of planned unit development (PUD) rezoning applications, that developers place funds in escrow from which Cannon Township is reimbursed for expenses incurred in processing and reviewing applications for compliance with its zoning ordinance. The circuit court granted defendants' motion for summary disposition. In a split opinion, this Court reversed. *Cornerstone Investments, Inc v Cannon Twp,* 231 Mich 1; 585 NW2d 41 (1998), rev'd 459 Mich 905 (1998). On defendants' appeal, the Supreme Court, in lieu of granting leave to appeal, reversed this Court's judgment for the reasons stated in the partial dissent,[2] and remanded for considera-

---

[1] Judge MARKEY is substituted for Judge REILLY, who sat on the original panel and has since retired.

[2] In the original appeal, this Court reversed the grant of summary disposition to defendants, concluding that defendants' Escrow Application

tion of issues raised in plaintiff's appeal of right that were not addressed in this Court's original opinion. We affirm the circuit court's grant of summary disposition to defendants.

The facts are largely set forth in this Court's original opinion, *Cornerstone Investments, Inc, supra* at 3-5.

I

We first address plaintiff's argument that defendants' Escrow Application Policy constitutes an illegal delegation of authority to an administrative body and administrative officials without definable standards or safeguards.

The Township Rural Zoning Act (TRZA), MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*, is an enabling act granting townships the authority to regulate land use and pass zoning ordinances. *Detroit Edison Co v Richmond Twp*, 150 Mich App 40, 48; 388 NW2d 296

---

Policy was not authorized by any statutory or constitutional grant of power and was invalid. This Court noted that although § 25 of the Township Rural Zoning Act (TRZA), MCL 125.295; MSA 5.2963(25), authorizes townships to charge "reasonable fees for zoning permits," it does not expressly authorize defendants' method of funding its PUD rezoning application and review process. After interpreting the term "fees" in § 25 as meaning a fixed or established charge, this Court concluded that defendants overstepped their legislative grant of power because the escrow fees charged are not fixed.

The partial dissent agreed that § 25 of the TRZA authorizes townships to require payment of fees to defray the costs of processing applications for rezoning, but disagreed with the majority's interpretation of the term "fees," noting that a charge need not be fixed at a sum certain to be a "fee," and that "a charge assessed for certain privileges or services relating to a zoning permit application that is fixed by reference to established policy and procedure can be a fee, and is not rendered not a fee simply because the amount depends on the circumstances of each application. The partial dissent agreed with the circuit court's determination that the Escrow Application Policy is fair and reasonable, and with the circuit court's reasoning in reaching that determination.

(1986). The TRZA broadly vests authority in townships to regulate land development to meet the needs of the state's citizens. *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 665; 593 NW2d 534 (1999). MCL 125.271(1); MSA 5.2963(1)(1). "[T]he status and force of this zoning authority is enhanced by our state constitution. Const 1963, art 7, § 34 provides that statutory provisions relating to townships 'shall be liberally construed.' " *Burt Twp, supra* at 666.

Michigan townships are not specifically directed to authorize the development of PUD's but have the authority to do so. MCL 125.286c; MSA 5.2963(16c)(1). Under subsection 16c(2) of the TRZA, townships may establish PUD requirements and establish a review and approval process governing PUD's:

> A township may establish planned unit development requirements in a zoning ordinance which permit flexibility in the regulation of land development; encourage innovation in land use and variety in design, layout, and type of structures constructed; achieve economy and efficiency in the use of land, natural resources, energy, and the provision of public services and utilities; encourage useful open space; and provide better housing, employment, and shopping opportunities particularly suited to the needs of the residents of this state. *The review and approval of planned unit developments shall be by either the zoning board, an official charged with administration of the ordinance, or the township board, as specified in the ordinance.* [MCL 125.286c(2); MSA 5.2963(16c)(2) (emphasis added).]

Section 16c of the TRZA states in pertinent part:

> (4) The planned unit development regulations [relating to land use] established by a township shall specify:
> (a) The body or official which will review and approve planned unit development requests.

(b) The conditions which create planned unit development eligibility, the participants in the review process, and the requirements and standards upon which applications will be judged and approval granted.

(c) The procedures required for application, review, and approval. [MCL 125.286c; MSA 5.2963(16c).]

Chapter XIV of defendants' zoning ordinance governs PUD's, sets forth minimum requirements for PUD districts, describes procedures for approval of PUD districts, and states that if the township board approves a developer's final development plan and proposed rezoning application, it may rezone the property in accordance with the TRZA, as amended. The zoning ordinance states that each application shall be accompanied by payment of a fee, as established by resolution of the township board.

Defendants' PUD Rezoning Application and Review Process, which incorporates the Escrow Application Policy, states that the $1,000 escrow fee "covers the cost of the services provided by professional consultants retained by the Township to assist in analyzing the rezoning request." The Escrow Application Policy states:

Included in the [Township] [P]lanner's report may be a suggested additional escrow amount proportioned to the proposal. The additional escrow amount shall be based upon the anticipated impact the application may have on variables such as project size, location, cost of providing public services, environmental impact, time constraints, land use, traffic and other factors.

The policy provides that additional $500 increments "may be required at the discretion of the Chairman of the Planning Commission," and that excess funds will be refunded without interest.

We conclude that the Escrow Application Policy does not constitute an illegal delegation of authority to an administrative body and administrative officials without definite standards or safeguards. The TRZA authorizes the township to establish conditions for PUD eligibility, MCL 125.286c(4)(b); MSA 5.2963(16c)(4)(b), and to establish a review and approval process, MCL 125.286c(2); MSA 5.2963(16c)(2). Further, the township zoning ordinance's PUD regulations meet the requirements of the TRZA, subsection 16c(4)(b), in that they set forth conditions for PUD eligibility, the procedures required for application, review, and approval, and that the planning commission reviews the PUD application and plan(s) and makes a recommendation to the township board, which determines whether the final development plan complies with the zoning ordinance and may approve the PUD request. Additionally,

> [t]he only express legislative limitations on the fee author-ized by the [TRZA] is that it be for the purposes of obtaining advance information or defraying the cost of enforcing the act in the township and that it must be reasonable. [MCL 125.295; MSA 5.2963(25); *Cornerstone*, 231 Mich App 13 (WHITE, P.J., dissenting in part).]

The fees charged in connection with defendants' Escrow Application Policy satisfy the first limitation because they are intended to defray costs incurred in connection with PUD zoning applications and their review. Defendants' zoning ordinance and the Escrow Application Policy set forth standards to guide the commission in determining whether and to what extent professional services, additional meetings, and so forth, are needed.

With respect to the second legislative limitation, that the fee be reasonable, the circuit court concluded, and we agree, that defendants' escrow fee was fair and reasonable. We also agree with the reasons stated by the circuit court in support of its determination:

> [I]t is based on actual costs; that is, the actual consulting fee incurred by the township in connection with the particular project. No additional municipal revenue is generated. Any remaining monies in the account are returned to the developer at the conclusion of the process.
>
> . . . [the fees] are proportionate to the costs of the regulation itself.
>
> *Merrelli versus St Claire [sic] Shores*, 355 Mich 575, 583, 584 [96 NW2d 144] (1959).
>
> . . . it is the developer who benefits from the consulting work rendering a property capable of development, and resulting profit to the developer with no perceived necessary value to the existing residence [sic].
>
> . . . it allows the developer a measure of control over the costs, provided that the site plan and other preliminary work is properly done, so that the need for review by outside consultants is minimized.
>
> . . . to mandate a fixed fee in advance would require a township to create out of vaccum [sic] an arbitrary amount with the disadvantage to its residents of imposing an unforeseen shortfall requiring increased taxes each year or, conversely, creating a windfall of revenue contrary to the intent of the statute itself.
>
> Moreover, the effect of a fixed fee on a developer is equally apparent. It can create a windfall to the developer of a complex project at the expense of one whose project is relatively simple and straightforward.
>
> \*    \*    \*
>
> . . . to the extent that developer claims [sic] that a particular escrow policy fee is unreasonable this Court is of the opinion, as is noted in the Flama case. [*Flama Constr Corp*

*v Franklin Twp*, 201 NJ Super 498, 503; 493 A2d 587 (1985).]

"All fees ultimately paid are subject to the requirement that they be reasonable, and that determination is subject to review by the courts."

We agree with the circuit court that *Flama* is instructive because there is no Michigan case on point and *Flama* involved circumstances similar to the instant case. There, a developer challenged the validity of a zoning ordinance that, as a prerequisite to any township board action, required payment into an escrow account of funds to pay for professional fees incurred in connection with its application. In affirming the lower court's determination that the zoning ordinance was valid, the appellate court noted:

On this appeal Flama argues that the ordinance impermissibly delegates legislative authority in contravention of the Municipal Land Use Law because it lacks adequate standards to enable the planning board and the board of adjustment to determine costs because the ordinance is contrary to NJSA 40:55D-24 and NJSA 40:55D-71. . . .

Flama concedes that NJSA 40:55D-8(b) authorizes a municipality to impose reasonable fees to defray the cost of reviewing development applications. That statute provides in pertinent part:

"Fees to be charged (1) an applicant for review of an application for development by a municipal agency, . . . shall be reasonable and shall be established by ordinance."

. We affirm . . . .

The ordinance provides for a specific dollar amount to be posted by the developer based on the size of the development and whether the proposed development is residential or "commercial/industrial development." Hence, a developer knows approximately the sum required to be posted. The ordinance also authorizes deviation from that fee schedule dependent upon an assessment of the complexity of the

application based upon four specific criteria set forth in the ordinance.

Under the specific criteria in the ordinance the respective boards determine whether the initial deposit is "sufficient, excessive or insufficient," and may make an adjustment accordingly. In our view these criteria express a reasonable concern that the complexity of a development proposal may vary depending on the presence or absence of enumerated factors such as public water and sewer service, environmental considerations, traffic impact . . . .

The ordinance also provides for a refund, with interest, of sums not actually expended to pay the cost of professional fees . . . . Although the exact amount ultimately to be charged may not be definitely fixed at the application stage because of uncertainty as to what may be involved in reviewing the application, mathematical certainty is not required for a fee ordinance to pass muster. . . . All fees ultimately paid are subject to the requirement that they be reasonable, and that determination is subject to review by the courts.

It is beyond dispute that the Legislature may delegate authority to an agency as long as the legislation delegating such authority provides adequate standards to guide the agency in exercising the delegated power. . . . If an ordinance is totally devoid of standards to guide and control administrative officials, the ordinance cannot stand. . . . However, the standards in the ordinance for the exercise of delegated authority "may either be expressed or implied from the legislation as a whole." [*Flama, supra* at 502-503 (citations omitted).]

As part of its argument that the Escrow Application Policy was an illegal delegation of authority, plaintiff also argued that because the policy lacked standards, the policy deprived plaintiff of its property rights and money without due process. We concluded above that the policy does not lack standards. Nor does the policy lack safeguards, as the township's land use decisions and zoning ordinances are subject to judicial

review. Plaintiff has failed to show that the zoning ordinance as applied to it is arbitrary and capricious and has therefore failed to rebut the presumption that the ordinance is valid. *A&B Enterprises v Madison Twp*, 197 Mich App 160, 164; 494 NW2d 761 (1992).

II

Plaintiff also argued that §§ 6 and 7a of the TRZA are inconsistent with and specifically oppose defendants' Escrow Application Policy, in that they require that compensation for zoning board members and planning experts be paid by appropriations made by the township board. We disagree.

MCL 125.276; MSA 5.2963(6) states:

> Members of the township zoning board may receive such compensation as may be fixed by the township board. The total annual amount to be allowed as expenses of all members of such board, including any compensation paid its employees, shall be appropriated annually in advance by the township board.

MCL 125.277a; MSA 5.2963(7a) states:

> The township zoning board may engage the services of a township planning expert with the consent of the township board, and the compensation for the services shall be paid from appropriations made by the township board.

Plaintiff argued below that these two provisions mandate that the planning experts be paid from funds previously appropriated and not from escrow fees collected on an ongoing basis. Again, there is no Michigan case law addressing this question, but *Flama, supra*, rejected that interpretation. In *Flama*, the appellate court rejected the developer's argument

that the ordinance was contrary to statutory provisions that mandated advance appropriation of funds:

> Flama also argues, apparently for the first time on appeal, that the ordinance is contrary to NJSA 40:55D-24 and NJSA 40:55D-71, which respectively provide in pertinent part:

> The planning board . . . may employ, or contract for, and fix the compensation of legal counsel, other than the municipal attorney, and experts, . . . not exceeding, . . . the amount appropriated by the governing body for its use. [NJSA 40:55D-240].

> a. The governing body shall make provision in its budget and appropriate funds for the expenses of the board of adjustment.

> b. The board of adjustment may employ, or contract for, and fix the compensation of legal counsel, other than the municipal attorney, and experts . . . not exceeding, . . . the amount appropriated by the governing body for its use. [NJSA 40:55D-71].

> Flama argues that these statutes require that professional fees incurred by the boards in reviewing a development application must only be paid from funds previously appropriated for that purpose by the governing body. We find no such limitation in the language of the statute. Obviously, a governmental entity cannot expend funds which have not been appropriated. But these statutes refer to different situations. If the board hired employees or professionals on a permanent basis, or even as experts in other cases, it would have to have the moneys before it could enter into the contract. What is involved in the instant case is distinguishable. Here funds are required to be posted in escrow, at interest, with the ultimate amount of the fee being determined after the full extent of the expenses of the expert are known. We conclude that imposing such fees is within the authority of the planning board or board of adjustment, and that it is consistent with their role as quasi-judicial bodies. This is somewhat akin to the practice of courts in appointing independent experts and assessing the costs against the litigants. Thus, a developer would pay no more and no less than what he would properly be chargeable for as an

expense to the municipality and its taxpayers incurred by the governmental review of an application. That may just as likely be less than the amount which had been required to be escrowed as it would be to equal or exceed the full amount required to be escrowed.

We thus reject Flama's contention that the Franklin ordinance is contrary to NJSA 40:55D-24 and NJSA 40:55D-71. [*Flama, supra* at 504-505 (citations omitted).]

III

Plaintiff's final argument is that the escrow fee policy is unenforceable because it was not adopted as part of the township's zoning ordinance. We disagree.

The TRZA does not require that fees connected to review of zoning applications be adopted by ordinance and, in any event, defendants' zoning ordinance provides in § 14.05 that applications be accompanied by payment of the PUD application fee.

Affirmed.