FRENS ORCHARDS, INC v DAYTON TOWNSHIP BOARD

Docket No. 225696. Submitted May 8, 2002, at Grand Rapids. Decided September 24, 2002, at 9:00 A.M. Leave to appeal sought.

Frens Orchards, Inc., brought an action in the Newaygo Circuit Court against the Dayton Township Board and others, seeking a declaration that land use restrictions in the Dayton Township zoning ordinance are preempted by portions of the Public Health Code, MCL 333.12401 *et seq.*, the Michigan Occupational Safety and Health Act (MIOSHA), MCL 408.1001 *et seq.*, and related administrative rules that pertain to agricultural labor camps. The court, Anthony A. Monton, J., granted summary disposition for the defendants. The plaintiff appealed.

The Court of Appeals *held*:

1. A state law preempts an ordinance if the statute completely occupies the field that the ordinance attempts to regulate or the ordinance directly conflicts with the state statute.

2. In this case, the Public Health Code, the MIOSHA, and the administrative rules at issue do not regulate the location of agricultural labor camps and therefore are not so pervasive that they would support a finding of preemption. Also, the location of agricultural labor camps does not require the kind of state-wide uniform regulation that would compel a finding of preemption.

3. No conflict exists between the state regulations and the township zoning ordinance that would require a finding of preemption.

Affirmed.

1. STATUTES — MUNICIPAL ORDINANCES — PREEMPTION.

A state law preempts a municipal ordinance if the statute completely occupies the field that the ordinance attempts to regulate or the ordinance directly conflicts with the statute.

2. STATUTES — MUNICIPAL ORDINANCES — PREEMPTION.

The following guidelines apply in determining whether a state statute completely occupies a field of regulation so as to preempt a municipal ordinance: first, where the state law expressly provides that the state's authority to regulate is to be exclusive, there is preemption; second, preemption may be implied upon an examination of legislative history; third, the pervasiveness of the state regulatory

scheme may support a finding of preemption; and fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.

*Richard M. VanOrden* for the plaintiff.

*Kevin J. Kozma* for the defendants.

Amicus Curiae:

*Bauckham, Sparks, Rolfe, Lohrstorfer & Thall, P.C.* (by *John H. Bauckham* and *Roxanne C. Seeber*), for Michigan Townships Association.

Before: WILDER, P.J., and BANDSTRA and HOEKSTRA, JJ.

WILDER, P.J. In this declaratory judgment action, plaintiff appeals from the trial court's order granting partial summary disposition to defendants Dayton Township Board (the township) and Dorothy Dykhouse.[1] The trial court rejected plaintiff's claim that land use restrictions in the township zoning ordinance are preempted by state statutes and administrative rules regarding migrant labor housing. We affirm.

### I. FACTS AND PROCEEDINGS

Plaintiff operates a farm in Dayton Township where it grows various fruits and vegetables that require harvest by hand. In order to facilitate the harvest, plaintiff employs forty to fifty migrant agricultural workers during the harvest season each year. Like many other farms of this nature, plaintiff provides

---

[1] The trial court granted plaintiff summary disposition on its claim that new construction of migrant housing does not require a permit under the State Construction Code. See MCL 125.1528. That decision is not a subject of this appeal.

temporary housing for its migrant agricultural workers. To meet its future labor needs, plaintiff decided to build three additional housing units to accommodate more agricultural workers. Plaintiff sought and obtained preliminary authorization from the Michigan Department of Agriculture, as required, to construct the additional housing. However, plaintiff was informed that in order to proceed with construction, it needed to obtain a special exception use permit from the township board because the township's zoning ordinance does not permit this type of housing in the Agricultural-3 (A-3) district where plaintiff's land is situated.

Rather than seeking the special exception use permit, plaintiff filed the instant action seeking a declaration that portions of the Michigan Public Health Code,[2] Michigan Occupational Safety and Health Act (MIOSHA),[3] and related administrative rules pertaining to agricultural labor camps preempt the township's ordinance restricting the location of housing for migrant laborers. Plaintiff moved for summary disposition pursuant to MCR 2.116(C)(10) on the issue, which the trial court denied. Instead, the trial court granted summary disposition for defendants. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo the trial court's decision on a motion for summary disposition. *Pohutski v Allen Park*, 465 Mich 675, 681; 641 NW2d 219 (2002). We

---

[2] MCL 333.12401 *et seq.*

[3] MCL 408.1001 *et seq.*

also review de novo questions of statutory interpretation. *Id.*

### III. ANALYSIS

Defendant's authority to regulate the use of land within Dayton Township is derived from the Township Rural Zoning Act, MCL 125.271 *et seq.* The township's authority under the act is broad and is to be liberally construed in favor of the township. Const 1963, art 7, § 34; *Cornerstone Investments, Inc v Cannon Twp (On Remand)*, 239 Mich App 98, 102; 607 NW2d 749 (1999). Article VI of the Dayton Township Zoning Ordinance (the ordinance) governs A-3 districts, and sections 6.01 to 6.05 address the permitted and prohibited uses of land within these districts. Migrant labor housing is not specifically listed in Article VI as a permitted use, a prohibited use, or as an additional use permitted under special conditions. Therefore, locating migrant labor housing in an A-3 district is permissible only if the user obtains a "special exception use permit" as detailed in Article XVIII of the ordinance.

Plaintiff argues that the limitations on the location of migrant labor housing are invalid because they are preempted by state law. A state law preempts an ordinance "if 1) the statute completely occupies the field that the ordinance attempts to regulate, or 2) the ordinance directly conflicts with a state statute." *Rental Property Owners Ass'n of Kent Co v Grand Rapids*, 455 Mich 246, 257; 566 NW2d 514 (1997). Plaintiff argues that preemption exists for both of these reasons. We disagree.

To determine whether a statute completely occupies a field of regulation so as to preempt local control, the following guidelines apply:

> "First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted. *Noey v Saginaw*, 271 Mich 595; 271 NW 88 (1935).
>
> "Second, pre-emption of a field of regulation may be implied upon an examination of legislative history. *Walsh v River Rouge*, 385 Mich 623; 189 NW2d 318 (1971).
>
> "Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. *Grand Haven v Grocer's Cooperative Dairy Co*, 330 Mich 694, 702; 48 NW2d 362 (1951) . . . . While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.
>
> "Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest." [*Rental Property Owners, supra* at 257, quoting *People v Llewellyn*, 401 Mich 314, 323-324; 257 NW2d 902 (1977).]

Here, plaintiff asserts that preemption arises under the third and fourth of these guidelines. With regard to pervasiveness, plaintiff argues that regulation of migrant labor housing in part 124 of the Public Health Code, MCL 333.12401 *et seq.*, the MIOSHA, MCL 408.1001 *et seq.*, and administrative rules promulgated pursuant to their authority is so extensive that any local control has been preempted.

The sections of the Public Health Code plaintiff relies on require the "camp operator" (in this case, plaintiff) to apply for a license to operate an agricultural labor camp. MCL 333.12411-333.12412. The

department will issue the license if after investigating and inspecting the camp, it "finds that the camp and its proposed operation conforms or will conform to the minimum standards of construction, health, sanitation, sewage, water supply, plumbing, garbage and rubbish disposal, and operation set forth in the rules promulgated under section 12421." MCL 333.12413. The administrative rules promulgated pursuant to the act further regulate the camps to ensure the health and safety of migrant laborers. For example, 1999 AC, R 325.3611 requires that an agricultural camp be well drained and free from offensive odors, flies, noise, traffic, debris, noxious plants, and uncontrolled weeds, plants, or brush. Other rules similarly regulate the health and safety conditions of the camp, setting standards for water supply, construction methods and materials, fire safety and first aid, electric supply to a shelter, bathing, toilet, and laundry facilities, and sewage, garbage, and refuse disposal. 1999 AC, R 325.3613-325.3631. Both the statutes and rules, however, regulate the *location* of a camp only in terms of its relationship to other conditions that would affect the health and safety of the camp's occupants. We conclude, therefore, that the location of agricultural labor camps is not pervasively regulated by the Public Health Code or its associated administrative rules.

We find further support for our conclusion in the language of MCL 333.1203 and 1999 AC, R 325.3605, in which local control of migrant housing is expressly permitted. MCL 333.1203, found in the general provisions of the Public Health Code, states:

The approval of plans or the issuance of a permit pursuant to this code which involves the construction, alteration, or renovation of a building, structure, or premises . . . does

> not relieve the person receiving the approval or permit from complying with all consistent applicable provisions of building and construction laws, zoning requirements and other state and local statutes, charters, ordinances, rules, regulations, and orders.

Here, the applicable provisions of the zoning ordinance are those that affect the use of plaintiff's land. Plaintiff contends that these provisions are not consistent with the Public Health Code and that they violate the statute. However, because the location of an agricultural labor camp within the township is not contemplated in the cited portion of the Public Health Code, we cannot conclude that the applicable provisions of the ordinance are inconsistent with the statutory requirements.

Similarly, Rule 325.3605(1) states that "[t]hese rules apply to all agricultural labor camps. A provision in these rules shall not take precedence over a requirement in an applicable local rule, ordinance, or code when such requirement is more stringent than the provision in these rules." Although the rules do not contain a provision that parallels the location limitation in the zoning ordinance, this rule demonstrates that local control of agricultural labor camps is still permitted.

Likewise, the cited portions of the MIOSHA do not address the location of the camps. Plaintiff argues that "Rule 4301" governs temporary labor camps, but this rule is not a part of the administrative code and does not have the force of law. *Clonlara, Inc v State Bd of Ed*, 442 Mich 230, 239; 501 NW2d 88 (1993). In sum, a reading of the pertinent sections of the zoning ordinance in conjunction with the cited statutes reveals that the ordinance addresses concerns not

affected by the statutes and administrative rules discussed above. Therefore, the state's regulation is not so pervasive that it would support a finding of preemption.

With regard to the fourth guideline in *Rental Property Owners*, plaintiff argues that the nature of migrant labor housing requires a uniform system of regulation within the state. With regard to the condition of the housing, this is certainly true. Inspectors need to be able to apply the same standards of suitability and safety wherever the housing is located throughout the state. With regard to the location of the housing within a township, however, this is not the case. Zoning ordinances can address the unique residential, commercial, and agricultural needs of each township, unlike statewide regulations. Different areas in our state have differing needs for migrant labor, as a review of the migrant labor statistics by county that plaintiff submitted plainly shows. Plaintiff contends that overly restrictive zoning ordinances have led to a shortage of affordable housing for migrant workers. If this is the case, rezoning may or may not be appropriate, but this problem does not support a finding of preemption.

We also find that the zoning ordinance is not preempted because of a conflict between the zoning ordinance and state laws and rules. In *Rental Property Owners, supra* at 262, the Court adopted the following language from 56 Am Jur 2d, Municipal Corporations, § 374, pp 408-409:

> "It has been held that in determining whether the provisions of a municipal ordinance conflict with a statute covering the same subject, the test *is whether the ordinance prohibits an act which the statute permits, or permits an act*

*which the statute prohibits.* Accordingly, it has often been held that a municipality cannot lawfully forbid what the legislature has expressly licensed, authorized, permitted, or required, or authorize what the legislature has expressly forbidden." [Emphasis in *Rental Property Owners.*]

Using this test, we find that no conflict exists here because the state regulations do not address the subject of the zoning ordinance—the location of a use of land within the township.

Finally, plaintiff argues on appeal that because the trial court stated that state regulation did not "totally exempt" a person from complying with the local zoning authority, it meant to indicate that some degree of preemption did exist and that it abused its discretion by failing to resolve this question in its ruling on plaintiff's motion for reconsideration. We disagree. The trial court's language in its conclusion simply mirrored the manner in which the issue had been previously phrased: whether "the state regulatory scheme for migrant housing *totally preempts* local zoning ordinances" (emphasis added). The trial court did not find that preemption existed to any extent.

Affirmed.