MICHIGAN COALITION FOR RESPONSIBLE GUN OWNERS v
CITY OF FERNDALE

Docket No. 242237. Submitted January 8, 2003, at Detroit. Decided April
29, 2003, at 9:10 A.M. Leave to appeal denied, 469 Mich ____.

The Michigan Coalition for Responsible Gun Owners, and three of its
members, brought an action against the city of Ferndale and city
clerk Karen Pedro in the Oakland Circuit Court, seeking injunctive
and declaratory relief after the defendants enacted an ordinance
prohibiting the possession or concealment of weapons, including
firearms, in all buildings owned or controlled by the city of Fern-
dale. The plaintiffs argued that the ordinance was preempted by
state law, while the defendants argued that enactment of the ordi-
nance was a valid exercise of the city's police power. The trial
court, John J. McDonald, J., granted summary disposition in favor
of the defendants, concluding that the ordinance was merely an
extension of prohibitions already imposed by state law on carriers
of concealed weapons. The plaintiffs appealed.

The Court of Appeals *held*:

MCL 123.1102 specifically states that a local unit of government
shall not enact or enforce any ordinance or regulation pertaining
to, or regulate in any other manner the ownership, registration,
purchase, sale, transfer, transportation, or possession of pistols or
other firearms except as otherwise provided by federal law or by a
law of this state. Thus, the Legislature stripped local governments
of all authority to regulate firearms by ordinance with respect to
areas enumerated by the statute unless federal or state law pro-
vides otherwise. Because the state law completely occupies the
field of regulation that the ordinance seeks to enter, the ordinance
is preempted by state law. The defendants' argument, that MCL
28.425c is a state law that otherwise permits local units of govern-
ment to regulate areas encompassed by § 1102, fails because the
two statutes must be read in pari materia, and there is no discern-
able intent by the Legislature to modify or revoke the prohibition
contained in § 1102.

Reversed.

WEAPONS — FIREARMS — MUNICIPAL ORDINANCE — STATUTES.

> State law preempts any city ordinance that prohibits the possession or concealment of firearms in municipally owned or controlled buildings (MCL 123.1102).

*Bambery Law Offices* (by *M. Carol Bambery*) for the plaintiffs.

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *T. Joseph Seward* and *Karen M. Haapala*), for the defendants.

Amicus Curiae:

*Secrest, Wardle, Lynch, Hampton, Truex and Morley* (by *Gerald A. Fisher* and *Thomas R. Schultz*) for the Michigan Municipal League.

Before: Jansen, P.J., and HOEKSTRA and GAGE, JJ.

HOEKSTRA, J. At issue in this case is whether local units of government are precluded from enacting and enforcing ordinances that make local public buildings gun-free zones. We hold that MCL 123.1102 preempts local regulation of this kind, and contrary to defendants city of Ferndale and city clerk Karen Pedro's argument, MCL 28.425c does not return to local units of government the authority to regulate in this area. Accordingly, we reverse the circuit court's order granting summary disposition in favor of defendants, and upholding the validity of defendants' ordinance prohibiting the possession or concealment of firearms in municipal buildings.

### I. FACTS AND PROCEDURAL HISTORY

On November 12, 2001, pursuant to its general police power, the city of Ferndale enacted Ordinance

No. 945 (the Ferndale ordinance), which prohibits the possession or concealment of weapons in all buildings located in Ferndale that are owned or controlled by the city.[1] The Ferndale ordinance exempts from its prohibitions federal, state, and local law-enforcement officers, Ferndale auxiliary police officers, and retired police officers. The Ferndale ordinance also provides an exception concerning the participation in a city gun buy-back program or the turning in of a weapon to the city for disposal or destruction.

On February 4, 2002, plaintiffs, Michigan Coalition for Responsible Gun Owners (MCRGO), and Jean Bruce, Alexander Kasa, and Greg Neu, who are members of MCRGO and residents of Ferndale, filed a complaint against defendants regarding the Ferndale ordinance, seeking injunctive and declaratory relief. In their complaint, plaintiffs alleged that the Ferndale ordinance is unconstitutional under the Michigan Constitution, Const 1963, art 7, § 22, and is preempted by state statutory law, including MCL 28.421 *et seq.* and MCL 123.1101 *et seq.* More specifically, plaintiffs alleged that the Ferndale ordinance is unlawful because it is in conflict with the state's statutory scheme in that it expands the exclusive statutory list of public places where concealed firearms are prohibited,[2] because "the Legislature clearly and unequivocally prohibited local units of government from regulating ownership, registration, purchase, sale, transfer, transportation or possession of pistols or other

---

[1] The Ferndale ordinance specifically includes "City Hall, Police Station, Fire Stations, DPW Administrative Office, Animal Shelter Building, Library, Gerry Kulick Community Center, Summer Youth Recreation Building while under City control and DPW Water Building."

[2] MCL 28.425o provides a list of places where the carrying of a concealed pistol is prohibited.

firearms," and because it is in direct conflict with MCL 123.1102.

In response to plaintiffs' complaint, defendants filed a motion to dismiss on the grounds that plaintiffs lacked standing to bring the lawsuit because they have not suffered an injury in fact, and that plaintiffs were not entitled to injunctive relief because their complaint asserts that an adequate remedy at law exists.[3] Defendants maintained that the Ferndale ordinance was enacted as a valid exercise of the city's police power pursuant to Const 1963, art 7, § 22; the Home Rule City Act, MCL 117.1 *et seq.*; and Chapter II, § 2(4) of the Ferndale Charter, and they sought summary disposition pursuant to MCR 2.116(C)(4), (7), (8), and (10).

In their response to defendants' motion to dismiss, plaintiffs sought relief under MCR 2.116(I), arguing that summary disposition was proper pursuant to MCR 2.116(C)(9) and (10). Relying mainly on MCL 123.1101 *et seq.* and MCL 28.421 *et seq.*, plaintiffs argued, in essence, that the Ferndale ordinance is in direct conflict with the state statutory scheme and that the ordinance is preempted by the state statutory scheme. Contrary to plaintiffs' assertions, defendants argued in a response brief that state law does not preempt the Ferndale ordinance; rather, the ordinance is merely an extension of the prohibition imposed by the state, and thus does not conflict with Michigan statutes.

During the June 12, 2002, hearing on the motions, the trial court found that the Ferndale ordinance was

---

[3] Neither of these issues is before us on appeal, although we do note that the trial court specifically ruled that plaintiffs had standing to maintain this action.

not preempted by state law and that the ordinance is merely an extension of the prohibition already imposed by state law on carriers of concealed weapons. Thus, the trial court denied plaintiffs' motion for summary disposition and granted summary disposition in favor of defendants pursuant to MCR 2.116(I)(2). Thereafter, the trial court entered an order dismissing plaintiffs' complaint with prejudice and without costs. This appeal ensued.

## II. STANDARD OF REVIEW

We review de novo the trial court's decision to grant or deny summary disposition. *Pohutski v City of Allen Park*, 465 Mich 675, 681; 641 NW2d 219 (2002); *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Likewise, we review de novo statutory interpretation, which involves a question of law. *Oakland Co Bd of Co Rd Comm'rs v Michigan Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

## III. ANALYSIS

Before analyzing the issue raised in this case, we briefly note what is *not* at issue here is whether governmental entities in Michigan generally have the power to create gun-free zones. This Court has held that the constitutionally guaranteed right to bear arms, Const 1963, art 1, § 6, is not absolute, but "may yield to a legislative enactment that represents a reasonable regulation by the state in the exercise of its police power to protect the health, safety, and welfare of Michigan citizens." *Kampf v Kampf*, 237 Mich App 377, 383 n 3; 603 NW2d 295 (1999), citing *People*

*v Smelter*, 175 Mich App 153, 155-156; 437 NW2d 341 (1989). Plaintiffs do not argue here, nor did they argue before the trial court, that the Ferndale ordinance is an unreasonable infringement on their constitutional right to bear arms. As the Michigan Municipal League aptly stated in its amicus curiae brief, "[t]his is not a gun rights case." Further, this case is *not* about public-policy choices that our Legislature has made with respect to where guns should or should not be allowed. Where statutory language is clear, "it is not the role of the judiciary to second-guess a legislative policy choice; a court's constitutional obligation is to interpret, not rewrite, the law." *Ambs v Kalamazoo Co Rd Comm*, 255 Mich App 637; 662 NW2d 424 (2003).

With these understandings in mind, we turn to the case at hand. The issue before us concerns the power of local units of government to enact and enforce ordinances or regulations and the limitations on that power. Accordingly, we begin our analysis by reviewing the legal context from which such powers are derived.

A. LEGAL CONTEXT

Under our state constitution and statutes, cities such as Ferndale have the authority to adopt resolutions and ordinances that have the force of law relating to their own concerns, property, and government. Const 1963, art 7, § 22 grants broad authority to cities, providing in pertinent part:

Each such city and village. shall have power to adopt resolutions and ordinances relating to its municipal concerns, property and government, subject to the constitution and

law. No enumeration of powers granted to cities and villages in this constitution shall limit or restrict the general grant of authority conferred by this section.

Further, "[t]he provisions of this constitution and law concerning counties, townships, cities and villages shall be liberally construed in their favor." Const 1963, art 7, § 34. "[A]lthough art 7, § 22 grants broad authority to municipalities, it clearly subjects their authority to constitutional and statutory limitations." *Mack v Detroit*, 467 Mich 186, 194; 649 NW2d 47 (2002). Specifically, that provision grants power that is "subject to the constitution and law." Const 1963, art 7, § 22.

The Home Rule City Act, MCL 117.1 *et seq.*, states that each city may provide in its charter

[f]or the exercise of all municipal powers in the management and control of municipal property and in the administration of the municipal government, whether such powers be expressly enumerated or not; for any act to advance the interests of the city, the good government and prosperity of the municipality and its inhabitants and through its regularly constituted authority to pass all laws and ordinances relating to its municipal concerns subject to the constitution and general laws of this state. [MCL 117.4j(3).]

In other words, home rule cities, including Ferndale, have specific authority to enact ordinances in order to advance the interests of the city. The Home Rule City Act repeats the constitutional limitation on a municipality's authority, expressly stating that "[n]o provisions of any city charter shall conflict with or contravene the provisions of any general law of the state," MCL 117.36, and that a city charter may provide "through its regularly constituted authority to pass all laws and ordinances relating to its municipal

concerns subject to the constitution and general laws of this state," MCL 117.4j(3). See *Mack, supra* at 194 n 7.

Although cities have the power to adopt resolutions and ordinances relating to municipal concerns, that power is " 'subject to the constitution and law.' " *Rental Prop Owners Ass'n of Kent Co v Grand Rapids,* 455 Mich 246, 256-257; 566 NW2d 514 (1997), quoting Const 1963, art 7, § 22. "[A] municipal ordinance is preempted by state law if 1) the statute completely occupies the field that ordinance attempts to regulate, or 2) the ordinance directly conflicts with a state statute." *Id.* at 257; accord *People v Llewellyn,* 401 Mich 314, 322; 257 NW2d 902 (1977); *Frens Orchards, Inc v Dayton Twp Bd,* 253 Mich App 129, 132; 654 NW2d 346 (2002). With respect to whether the state statutory scheme preempts a municipal ordinance by completely occupying the field of regulation that the municipality seeks to enter,[4] in *Llewellyn, supra,* our Supreme Court set forth four guidelines:

> First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted.
>
> Second, pre-emption of a field of regulation may be implied upon an examination of legislative history.
>
> Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. While the pervasiveness of the state regulatory scheme is not generally sufficient by itself to infer pre-emption, it is a factor which should be considered as evidence of pre-emption.

---

[4] Because our analysis focuses on, and resolution of this case hinges on, whether the state statutory scheme preempts the Ferndale ordinance by occupying the field of regulation that the city of Ferndale seeks to enter, we do not further explain or discuss preclusion by "direct conflict."

> Fourth, the nature of the regulated subject matter may demand exclusive state regulation to achieve the uniformity necessary to serve the state's purpose or interest.
>
> As to this last point, examination of relevant Michigan cases indicates that where the nature of the regulated subject matter calls for regulation adapted to local conditions, and the local regulation does not interfere with the state regulatory scheme, supplementary local regulation has generally been upheld.
>
> However, where the Court has found that the nature of the subject matter regulated called for a uniform state regulatory scheme, supplementary local regulation has been held pre-empted. [*Id.* at 323-325 (citations omitted).]

With this legal context in mind, we undertake to determine whether the trial court erred in upholding the Ferndale ordinance in light of certain Michigan firearms statutes.

### B. RELEVANT STATE FIREARMS STATUTES

In 1990, the Michigan Legislature enacted MCL 123.1101 *et seq.*,[5] "to prohibit local units of government from imposing certain restrictions on the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, ammunition for pistols or other firearms, or components of pistols or other firearms." Preamble, 1990 PA 319.[6] A provision of that act, MCL 123.1102 (§ 1102),[7] provides:

---

[5] 1990 PA 319, effective March 28, 1991.

[6] Although a preamble is not to be considered authority for construing an act, it is useful for interpreting the purpose and scope of the act. *Malcolm v East Detroit*, 437 Mich 132, 143; 468 NW2d 479 (1991); *People v Biller*, 239 Mich App 590, 594; 609 NW2d 199 (2000).

[7] For the purpose of clarity when discussing the statutes implicated by this appeal, section 2 of MCL 123.1101 *et seq.*, i.e., MCL 123.1102, will be referred to throughout this opinion as § 1102.

> *A local unit of government shall not* impose special taxation on, *enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms,* ammunition for pistols or other firearms, or components of pistols or other firearms, *except as otherwise provided by federal law or a law of this state.* [Emphasis supplied.]

The act further provides three narrow areas concerning pistols or other firearms that a city is not precluded from prohibiting or regulating, MCL 123.1103 and MCL 123.1104, but those areas are not germane to this appeal.

In 2000, the Michigan Legislature enacted amendments to MCL 28.421 *et seq.*,[8] in part to regulate the selling, purchasing, possessing, and carrying of certain firearms. The preamble to that legislation provides:

> An act to regulate and license the selling, purchasing, possessing, and carrying of certain firearms and gas ejecting devices; to prohibit the buying, selling, or carrying of certain firearms and gas ejecting devices without a license or other authorization; to provide for the forfeiture of firearms under certain circumstances; to provide for penalties and remedies; to provide immunity from civil liability under certain circumstances; to prescribe the powers and duties of certain state and local agencies; to prohibit certain conduct against individuals who apply for or receive a license to carry a concealed pistol; to make appropriations; to prescribe certain conditions for the appropriations; and to repeal all acts and parts of acts inconsistent with this act. [Preamble, 1927 PA 372, as amended through 2000 PA 381.]

---

[8] 2000 PA 381, effective July 1, 2001.

The intent of the Legislature is expressly stated in § 1a of this act, which was added by 2000 PA 381, and provides:

> It is the intent of the legislature to create a standardized system for issuing concealed pistol licenses to prevent criminals and other violent individuals from obtaining a license to carry a concealed pistol, to allow law abiding residents to obtain a license to carry a concealed pistol, and to prescribe the rights and responsibilities of individuals who have obtained a license to carry a concealed pistol. It is also the intent of the legislature to grant an applicant the right to know why his or her application for a concealed pistol license is denied and to create a process by which an applicant may appeal that denial. [MCL 28.421a.]

Among the legislative amendments enacted in 2000 was § 5c, which contains provisions concerning the rights of a licensee. In relevant part, § 5c provides:

> Subject to section 5o and *except as otherwise provided by law*, a license to carry a concealed pistol issued by the county concealed weapon licensing board authorizes the licensee to do all of the following:
>
> (a) Carry a pistol concealed on or about his or her person *anywhere in this state.*
> (b) Carry a pistol in a vehicle, whether concealed or not concealed, anywhere in this state. [MCL 28.425c(2) (emphasis supplied).]

Significantly, § 5o provides a list of premises on which carrying a concealed weapon is prohibited. Some examples of these premises include schools, public or private day-care centers, sports arenas or stadiums, bars, certain entertainment facilities, hospitals, college dormitories and classrooms, and, in certain circumstances, places of worship. MCL

28.425o(1). The list does not include municipal buildings.

In the present case, the Ferndale ordinance prohibits the possession or concealment of a weapon[9] in city buildings, providing in pertinent part:

(d) Possession or concealment of weapon prohibited.

(1) Except as otherwise provided in subsections (2) and (3), possession or concealment of a weapon shall be prohibited in all buildings owned and/or controlled by the City of Ferndale and located in the City of Ferndale including: City Hall, Police Station, Fire Stations, DPW Administrative Office, Animal Shelter Building, Library, Gerry Kulick Community Center, Summer Youth Recreation Building while under City control and DPW Water Building.

(2) Notwithstanding any other provision of this section, any State, Federal or Local law enforcement officer, Ferndale Auxiliary Police Officer and Retired Police Officer may possess or conceal a weapon while at the public buildings owned and/or controlled by the City of Ferndale which are identified in section (d)(1).

(3) Notwithstanding any other provision of this section, a person may, while complying with any gun registration requirements, while participating in a City gun buy-back program or turning in a weapon to the City for disposal or destruction, possess an unloaded weapon at the particular public building in connection with such activity.

---

[9] The Ferndale ordinance defines "weapon" to include the same language that MCL 123.1101 refers to and that MCL 28.421 uses to define "pistol," which is a type of firearm. However, we note that the Ferndale ordinance defines weapon to include also "a dagger, dirk, razor, stiletto or knife having a blade over three inches in length." This opinion does not address the validity of the Ferndale ordinance with respect to any weapon other than pistols and other firearms.

Indisputably, if not preempted by state law, this ordinance would be a lawful exercise of the city of Ferndale's power to enact an ordinance that regulates the use of property it owns or controls. Const 1963, art 7, §§ 22, 34; MCL 117.1 *et seq.*

We turn now to the question whether Michigan statutory law concerning firearms preempts the Ferndale ordinance. We begin this inquiry by examining the firearm statute found at MCL 123.1101 *et seq.*

In no uncertain terms, § 1102 of the act mandates that "[a] local unit of government *shall not* . . . enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols or other firearms, . . . except as otherwise provided by federal law or a law of this state." (Emphasis supplied.) With the pronouncement in § 1102, the Legislature stripped local units of government of all authority to regulate firearms by ordinance or otherwise with respect to the areas enumerated in the statute,[10] except as particularly provided in other provisions of the act and unless federal or state law provided otherwise. Unlike some other statutes, § 1102 does not use language to the effect that the act "occupies the whole field of regulation,"[11] but rather expressly removes the power of local units of

---

[10] Although the areas enumerated in the statute do not specifically include the "carrying" of a firearm, defendants do not suggest that the language of § 1102 does not encompass that concept. Indeed, it would be disingenuous to argue that the broad terms "transportation" and "possession" do not encompass "carrying."

[11] See, e.g., MCL 252.304 ("This act regulates and controls the size, lighting, and spacing of signs and sign structures in adjacent areas and occupies the whole field of that regulation and control except for the following . . . .").

government to regulate in the field. The effect is to occupy the field to the exclusion of local units of government. In other words, although stated in the negative, rather than the affirmative, the statutory language of § 1102 demonstrates that, in effect, state law completely occupies the field of regulation that the Ferndale ordinance seeks to enter, to the exclusion of the ordinance, although subject to limited exceptions. See *Llewellyn, supra* at 322.[12] With the enactment of § 1102, the Legislature made a clear policy choice to remove from local units of government the authority to dictate where firearms may be taken.

In the present case, it is readily apparent that the Ferndale ordinance regulates areas that § 1102 expressly prohibits. Section 1102 provides that a local unit of government shall not enact an ordinance pertaining to the transportation or possession of firearms, but the city of Ferndale does just that. Despite the clear language of the Legislature, amicus curiae contends in a conclusory fashion that § 1102 should not preempt ordinances like the Ferndale ordinance because the statute "is not clearly aimed at municipal control of activities within the confines of its own public buildings." However, the language of § 1102 is broad and all-encompassing. A state statute that prohibits a local unit of government from enacting "any ordinance or regulation" or regulating "in any other manner" the transportation or possession of firearms cannot reasonably be interpreted to exclude local ordinances that address the carrying of firearms in municipal buildings. Indeed, in their brief defendants

---

[12] Because the net effect of § 1102 is to completely occupy the field, we find it unnecessary to address the other *Llewellyn* factors.

concede that under § 1102 local units of government are prohibited "from enacting laws that concern ownership or possession of firearms, 'except as otherwise provided by federal law or a law of this state.'" In sum, the Ferndale ordinance is preempted by § 1102 unless it can be shown that such regulation is permitted under the language "except as otherwise provided by federal law or a law of this state" in § 1102.[13]

Thus, our analysis turns to whether a law of this state otherwise permits a local unit of government to regulate an area encompassed by § 1102.[14] Defendants contend that § 5c of MCL 28.421 *et seq.* is "a law of this state" that does just that. Defendants argue, in essence, that § 5c, which is part of the amendments of MCL 28.421 *et seq.* enacted in 2000, returns to local units of government the power to enact and enforce an ordinance or regulation concerning the possession and transportation of pistols or other firearms. In other words, defendants argue that what § 1102 prohibited, § 5c now permits by virtue of the language "except as otherwise provided by law." We disagree.

In relevant part, § 5c provides that, "[s]ubject to section 5o and except as otherwise provided by law," a person licensed to carry a concealed pistol may do

---

[13] We note that MCL 123.1101 *et seq.* also sets forth three narrowly defined areas that local units of government are not prohibited from addressing. The act does not prohibit local units of government from prohibiting or regulating conduct with firearms that constitutes a criminal offense under state law, MCL 123.1103(a), or from prohibiting or regulating the transportation, carrying, or possession of firearms by their employees in the course of their employment, MCL 123.1103(b). Additionally, the act does not prohibit a city from prohibiting the discharge of a firearm within the city's jurisdiction. MCL 123.1104. These provisions have no application to this case.

[14] While § 1102 also indicates that federal law may otherwise permit a local unit of government to regulate an area encompassed by § 1102, the parties in this case do not address or rely on any federal law.

so "on or about his or her person anywhere in this state." MCL 28.425c(2)(a). Defendants maintain that although § 5o provides a list of premises on which the carrying of a concealed pistol is prohibited, MCL 28.425o(1), that list is not all-inclusive; rather "the inclusion of the language 'and except as otherwise provided by law' is indicative of the [legislative] intent to allow other exceptions to be established." However, defendants' analysis fails to consider the language of § 5c in light of § 1102.[15]

When two statutes relate to the same subject or share a common purpose, they are in pari materia and must be read together as one law, even if they make no reference to one another and were enacted on different dates. *Jackson Community College v Dep't of Treasury*, 241 Mich App 673, 681; 621 NW2d 707 (2000). Our Supreme Court has explained:

"Statutes in pari materia are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose. It is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in

---

[15] In their briefs, the parties spend considerable time analyzing whether § 5c itself preempts municipalities from enacting ordinances, like the Ferndale ordinance, that place restrictions on where licensed gun-owners may carry concealed firearms within a municipality. We do not engage in a preemption analysis of § 5c because it is unnecessary for resolution of the issue presented in this case. As we have stated in this opinion, § 1102 preempts the Ferndale ordinance. To overcome this preemption, a federal or state statute must indicate an intent to permit local units of government to regulate in this area despite the broad and unequivocal limiting language of § 1102. Here, defendants argue that § 5c demonstrates that intent. Thus, the issue before us is one of statutory interpretation. Although § 5c has the potential to be a preemption law, we need not reach that issue unless § 5c in fact removes the prohibition in § 1102 with respect to local units of government regulating the possession and transportation of firearms.

> connection with it, as together constituting one law, although enacted at different times, and containing no reference one to the other." [*State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998), quoting *Detroit v Michigan Bell Telephone Co*, 374 Mich 543, 558; 132 NW2d 660 (1965) (citations omitted).]

Because MCL 123.1101 *et seq.* and MCL 28. 421 *et seq.* both address the possession and transportation of firearms in Michigan, they are in pari materia and must be read together as one law. Further, "it is a well-known principle that the Legislature is presumed to be aware of all existing statutes when enacting a new statute." *Jenkins v Patel*, 256 Mich App 112, 126; 662 NW2d 453 (2003).

We disagree with defendants' interpretation of the "except as otherwise provided by law" language of § 5c(2) for multiple reasons. First, considering the acts at issue in pari materia, we conclude that § 5c does not manifest an intent to repeal § 1102 or to expand the role of local units of government with respect to firearm regulation. Simply stated, a review of the statutory language reveals a clear intent more than a decade ago to prohibit local units of government from enacting an ordinance such as the Ferndale ordinance, but no clear intent a decade later to limit or remove that prohibition. Also, we believe that given the presumption of the Legislature's awareness of § 1102 at the time §§ 5c and 5o were enacted, it is reasonable to assume that if the Legislature intended to reopen this area of regulation to local units of government, it would have addressed the issue specifically in the newer legislation. Because no specific language addresses the role of local units of government with regard to regulating where persons licensed to

carry concealed weapons may carry them, we conclude that the Legislature intended to maintain the prohibitions placed on local units of government that are contained in § 1102.[16] Therefore, we hold that the "except as otherwise provided by law" language of § 5c does not revoke or modify the prohibition on firearm regulation contained in § 1102 and, consequently, provides no basis on which to hold that the Ferndale ordinance is not preempted.

IV. CONCLUSION

In sum, we conclude that § 1102 is a statute that specifically prohibits local units of government from enacting and enforcing any ordinances or regulations pertaining to the transportation and possession of firearms, and thus preempts any ordinance or regulation of a local unit of government concerning these areas. Further, we conclude that the specific language of the 2000 amendments of MCL 28.421 *et seq.*, particularly §§ 5c and 5o, which were adopted more than a decade after the enactment of § 1102, do not repeal § 1102 or otherwise reopen this area to local regulation of the carrying of firearms.[17] Accordingly, we hold that the Ferndale ordinance is preempted by state law and, consequently, we reverse.

---

[16] Had the Legislature intended to revoke the prohibitions placed on local units of government that are contained in § 1102, it could have repealed or amended MCL 123.1101 *et seq.* at the time it enacted the amendments of MCL 28.421 *et seq.* in 2000 or precisely stated in the latter act the intent to return authority to local units of government to regulate the carrying of concealed weapons in their jurisdiction. We note that the amendments of MCL 28.421 *et seq.* in 2000 repealed certain sections of that act, including sections 3, 6, 9d, and 12c, i.e., MCL 28.423, 28.426, 28.429d, and 28.432c.

[17] In light of these conclusions, we need not reach whether the Ferndale ordinance is in direct conflict with MCL 28.421 *et seq.*

Reversed. No costs are to be awarded because an issue of public significance is involved.