# STATE OF MICHIGAN

# COURT OF APPEALS

JOSHUA WADE,

        Plaintiff-Appellant,

v

UNIVERSITY OF MICHIGAN,

        Defendant-Appellee.

FOR PUBLICATION
June 6, 2017
9:00 a.m.

No. 330555
Court of Claims
LC No. 15-000129-MZ

Before: CAVANAGH, P.J., and SAWYER and SERVITTO, JJ.

CAVANAGH, P.J.

Plaintiff, Joshua Wade, appeals as of right an order granting summary disposition in favor of defendant, University of Michigan, and dismissing plaintiff's complaint seeking declaratory and injunctive relief from a University ordinance which prohibits firearms on any University property. We affirm.

In February 2001, the University revised the weapons provision, Article X, of its "Ordinance to Regulate Parking and Traffic and to Regulate the Use and Protection of the Buildings and Property of the Regents of the University of Michigan," and made all properties owned, leased or controlled by the University weapons-free. Article X, titled "Weapons," provides:

**Section 1. Scope of Article X**

Article X applies to all property owned, leased or otherwise controlled by the Regents of the University of MIchigan [sic] and applies regardless of whether the Individual has a concealed weapons permit or is otherwise authorized by law to possess, discharge, or use any device referenced below.

**Section 2. Possession of Firearms, Dangerous Weapons and Knives**

Except as otherwise provided in Section 4, no person shall, while on any property owned, leased, or otherwise controlled by the Regents of the University of Michigan:

(1) possess any firearm or any other dangerous weapon as defined in or interpreted under Michigan law or

-1-

(2) wear on his or her person or carry in his or her clothing any knife, sword or machete having a blade longer than four (4) inches, or, in the case of knife with a mechanism to lock the blade in place when open, longer than three (3) inches.

**Section 3.  Discharge or Use of Firearms, Dangerous Weapons and Knives**

Except as otherwise provided in Section 4, no person shall discharge or otherwise use any device listed in the preceding section on any property owned, leased, or otherwise controlled by the Regents of the University of Michigan.

**Section 4.  <u>Exceptions</u>**

(1) Except to the extent regulated under Subparagraph (2), the prohibitions in this Article X do not apply:

      (a) to University employees who are authorized to possess and/or use such a device . . . ;

      (b) to non-University law enforcement officers of legally established law enforcement agencies . . . ;

      (c) when someone possess [sic] or use such a device as part of a military or similar uniform or costume In [sic] connection with a public ceremony . . . ;

      (d) when someone possesses or uses such a device in connection with a regularly scheduled educational, recreational or training program authorized by the University;

      (e) when someone possess [sic] or uses such a device for recreational hunting on property . . . ; or

      (f)  when the Director of the University's Department of Public Safety has waived the prohibition based on extraordinary circumstances.  Any such waiver must be in writing and must define its scope and duration.

(2)  The Director of the Department of Public Safety may impose restrictions upon individuals who are otherwise authorized to possess or use such a device pursuant to Subsection (1) when the Director determines that such restrictions are appropriate under the circumstances.

**Section 5.  Violation Penalty**

A person who violates this Article X is guilty of a misdemeanor, and upon conviction, punishable by imprisonment for not less than ten (10) days and no more than sixty (60) days, or by a fine of not more than fifty dollars ($50.00) or both.

Subsequently, plaintiff sought a waiver of the prohibition as set forth in § 4(1)(f) of Article X. After his request was denied, plaintiff filed this action. In Count I, plaintiff alleged that the ban on firearms violates his federal and state constitutional rights to keep and bear arms as set forth in the Second Amendment of the United States Constitution and Article 1, § 6 of the Michigan Constitution. In Count II, plaintiff alleged that Article X is invalid because MCL 123.1102, which prohibits local units of government from establishing their own limitations on the purchase, sale, or possession of firearms, preempts the ordinance. Plaintiff requested the Court of Claims to declare that Article X is unconstitutional and preempted by MCL 123.1102, and that defendant was enjoined from its enforcement.

The University responded to plaintiff's complaint with a motion for summary disposition under MCR 2.116(C)(8). The University argued that the Second Amendment does not reach "sensitive places," which includes schools like the University property.[1] But even if the Second Amendment applied, Article X did not violate it because the ordinance was substantially related to important governmental interests, including maintaining a safe educational environment for its students, faculty, staff, and visitors, as well as fostering an environment in which ideas—even controversial ideas—can be freely and openly exchanged without fear of reprisal. The University further argued that Article X did not violate the Michigan Constitution because it is a reasonable exercise of the University's authority under Article VIII, § 5 to control its property, maintain safety on that property, and to cultivate a learning environment. Moreover, MCL 123.1102 did not apply to the University because it is not a "local unit of government;" rather, it is a constitutional corporation that is coordinate and equal to that of the Legislature. Thus, the University has the exclusive authority to manage and control its property, including the day-to-day operations of the institution with regard to the issue of firearm possession on its property. Accordingly, the University argued, plaintiff's complaint failed to state a claim upon which relief could be granted and should be dismissed.

Plaintiff responded to the University's motion for summary disposition, arguing that Article X violates the Second Amendment of the United States Constitution which, as explained in *District of Columbia v Heller*, 554 US 570, 592, 595; 128 S Ct 2783; 171 L Ed 2d 637 (2008), guarantees to individuals the right to keep and bear arms for self-defense. And, contrary to the University's claim, the University is not a "sensitive place" under *Heller* because it is "not a school as that word is commonly understood. It is a community where people live and work, just as any community." Further, plaintiff argued, even if Article X is not unconstitutional, the Michigan Legislature "has closed off the field of firearms to regulation by any other governmental actor." That is, the ordinance is preempted by MCL 123.1102 because the same principles of preemption apply to the University as apply to a municipality or quasi-municipal corporation. And the University is a "'lower-level governmental entity' than the state legislature when it comes to conflicts of legislative authority." Accordingly, plaintiff argued, the University's motion for summary disposition should be denied.

---

[1] See *District of Columbia v Heller*, 554 US 570, 626-627; 128 S Ct 2783; 171 L Ed 2d 637 (2008).

The Court of Claims agreed with the University. First, the court held that the University is a public educational institution—a school—and, thus, a "sensitive place" as contemplated by the *Heller* Court. Regulations restricting firearms in such places are presumptively legal; consequently, the University's "ordinance does not fall within the scope of the right conferred by the Second Amendment or Const 1963, Art 1, § 6." Therefore, Count I of plaintiff's complaint was dismissed for failure to state a claim. Second, the court held that MCL 123.1102 plainly applies only to a "local unit of government," which is defined by MCL 123.1101(b) as "a city, village, township or county." Because the University is not a "local unit of government," the prohibitions set forth in MCL 123.1102 do not apply to it. However, even if the University was considered a "local unit of government," the court held, MCL 123.1102 specifically provides that such governmental units may enact regulations "as otherwise provided by federal law or a law of this state." Because the Michigan Constitution, pursuant to Article VIII, § 5, grants the University "general supervision of its institution," the University had the right to promulgate firearm regulations for the safety of its students, staff, and faculty consistent with its right to educational autonomy and its mission to educate. Therefore, Count II of plaintiff's complaint was also dismissed. Accordingly, the University's motion for summary disposition was granted. This appeal followed.

Plaintiff argues that the Court of Claims erred when it ruled that Article X's complete ban of firearms on University property did not violate his Second Amendment rights.[2] We disagree.

We review de novo a court's decision on a motion for summary disposition. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 445; 886 NW2d 445 (2015). A motion brought under "MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." *Id.* (quotation marks and citation omitted). A challenge to the constitutionality of a regulation presents a question of law that this Court also reviews de novo on appeal. *McDougall v Schanz*, 461 Mich 15, 23; 597 NW2d 148 (1999).

The Second Amendment of the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *Heller*, 554 US at 570, the United States Supreme Court undertook, for the first time, an in-depth examination of the scope of Second Amendment rights, primarily related to determining whether the amendment guaranteed individual or collective rights. At issue was the District of Columbia's handgun ban, which criminalized the registration of handguns and permitted possession of such guns only upon the chief of police's approval of a one-year license. *Id.* at 574-575. The law also required that lawfully owned guns, such as registered long-arms, be rendered inoperable while in the home. *Id.* at 575. In determining that the Second Amendment guaranteed individual rights, the *Heller* Court focused on the original meaning of the Second Amendment, relying on historical materials to discern how the public

---

[2] Plaintiff's argument on appeal focuses solely on his rights under the Second Amendment; thus, we consider any claim premised on the Michigan Constitution abandoned. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

understood the amendment at the time of its ratification, *id*. at 595-600, and noting that "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them[.]" *Id*. at 634-635. Review of these materials led the *Heller* Court to conclude that the Second Amendment codified a pre-existing right to bear arms, that the right was not limited to the militia, and that the central component of this right was self-defense, primarily in one's own home. *Id*. at 595, 599-600.

With regard to the District of Columbia's handgun ban, the *Heller* Court held that the Second Amendment precludes the "absolute prohibition of handguns held and used for self-defense in the home." *Id*. at 636. And with regard to the District's requirement that firearms in the home be kept inoperable, the *Heller* Court stated: "This makes it impossible for citizens to use them for the core lawful purpose of self-defense and is hence unconstitutional." *Id*. at 630. However, the *Heller* Court also clarified that "the right secured by the Second Amendment is not unlimited" and that individuals may not keep and carry any weapon "whatsoever in any manner whatsoever and for whatever purpose." *Id*. at 626. The *Heller* Court then identified a non-exhaustive list of "presumptively lawful regulatory measures," stating:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms. [*Id*. at 626-627, and n 26.[3]]

In other words, the Court recognized that the scope of the right did not, historically, extend to certain individuals or to certain places.

The United States Supreme Court considered the Second Amendment again in *McDonald v Chicago*, 561 US 742, 750; 130 S Ct 3020; 177 L Ed 2d 894 (2010), where it considered the validity of a handgun ban, similar to that in *Heller,* in the cities of Chicago and Oak Park. The cities argued that the ban was constitutional because the Second Amendment did not apply to the states. *Id*. The *McDonald* Court disagreed, declaring that the Second Amendment applies to the states by virtue of the Fourteenth Amendment. *Id*. at 778. The *McDonald* Court reiterated that laws forbidding the carrying of firearms in sensitive places are presumptively lawful regulatory measures. *Id*. at 786. Further, in analyzing whether the cities' handgun bans were within the scope of the Second Amendment's protected activity, the Court again considered the historical and traditional understanding of the Second Amendment at the time the Fourteenth Amendment was adopted. *Id*. at 768-778. Thus, "*McDonald* confirms that if the claim concerns a state or local law, the 'scope' question asks how the right was publicly understood when the Fourteenth Amendment was proposed and ratified." *Ezell v Chicago*, 651 F 3d 684, 702 (CA 7, 2011).

---

[3] Plaintiff's attempt to characterize this passage as dicta is unpersuasive. As defendant points out, this language is an explanation of what the Court held and did not hold in *Heller*.

The holdings in *Heller* and *McDonald* have led to the application of a two-part test with respect to Second Amendment challenges to firearm regulations. The threshold inquiry is whether the challenged regulation "regulates conduct that falls within the scope of the Second Amendment right as historically understood." *People v Wilder*, 307 Mich App 546, 556; 861 NW2d 645 (2014), quoting *People v Deroche*, 299 Mich App 301, 308-309; 829 NW2d 891 (2013) (citation omitted). If the regulated conduct has historically been outside the scope of Second Amendment protection, the activity is not protected and no further analysis is required. *Wilder*, 307 Mich App at 556 (citation omitted). If, however, the challenged conduct falls within the scope of the Second Amendment, an intermediate level of constitutional scrutiny is applicable and requires the showing of "a reasonable fit between the asserted interest or objective and the burden placed on an individual's Second Amendment right." *Id.* at 556-557.

Here, plaintiff's complaint alleged that Article X's complete ban of firearms on University property violates his Second Amendment rights. The relevant question in light of plaintiff's complaint and the applicable analytical framework is whether Article X regulates conduct that was historically understood to be protected by the Second Amendment at the time of the Fourteenth Amendment's ratification, i.e., 1868. See *Ezell*, 651 F 3d at 702-703. While the Supreme Court in *Heller* indicated that certain "sensitive places," including schools, are categorically unprotected, we must consider whether a "university" was considered a "school" in 1868.[4] And it appears to have been so. That is, Webster's 1828 Dictionary defines "university" as:

> An assemblage of colleges established in any place, with professors for instructing students in the sciences and other branches of learning, and where degrees are conferred. A university is properly a universal school, in which are taught all branches of learning, or the four faculties of theology, medicine, law and the sciences and arts. [Webster's 1828 Dictionary online, <http://webstersdictionary1828.com/Dictionary/university (emphasis added).]

Likewise, the term "school" in 1828 was defined, in part, to include "universities":

> A place of education, or collection of pupils, of any kind; as the schools of the prophets. In modern usage, the word school comprehends every place of education, as university, college, academy, common or primary schools, dancing schools, riding schools, etc.; but ordinarily the word is applied to seminaries inferior to universities and colleges. [Webster's 1828 Dictionary online, <http://webstersdictionary1828.com/Dictionary/school.]

Given that at the historically relevant period, universities were understood to be schools and, further, that *Heller* recognized that schools were sensitive places to which Second Amendment protections did not extend, we conclude as a matter of law that Article X does not burden conduct protected by the Second Amendment. Therefore, no further analysis is required. Stated differently, Article X does not infringe on Second Amendment rights. No factual

---

[4] The Court of Claims did not consider the historical meaning of "university" and whether it was understood as a "sensitive place."

development could change this result. Because plaintiff has not made a cognizable Second Amendment claim, summary disposition under MCR 2.116(C)(8) was proper.

Next, plaintiff argues that the Court of Claims erred by concluding that MCL 123.1102 did not preempt the University's ordinance which banned all firearms from University property. After de novo review of this question of statutory interpretation, we disagree. See *Ter Beek v City of Wyoming*, 495 Mich 1, 8; 846 NW2d 531 (2014).

> Article VIII, Section 5 of the 1963 Constitution provides, in relevant part:
> The regents of the University of Michigan and their successors in office shall constitute a body corporate known as the Regents of the University of Michigan . . . . [The Regents] shall have general supervision of its institution and the control and direction of all expenditures from the institution's funds.

The Board of Regents of the University of Michigan has a unique legal character as a constitutional corporation possessing broad institutional powers. It has long been recognized that the University Board of Regents "is a separate entity, independent of the State as to the management and control of the university and its property, [while at the same time] a department of the State government, created by the Constitution . . . ." *Regents of Univ of Mich v Brooks*, 224 Mich 45, 48; 194 NW 602 (1923). Although the University Board of Regents have at various times been referred to as part of the executive branch that may be affected by the Legislature's plenary powers, it has also been recognized that the Board is " 'the highest form of juristic person known to the law, a constitutional corporation of independent authority, which, within the scope of its functions, is co-ordinate with and equal to that of the legislature.' " *Federated Publications, Inc v Mich State Univ Bd of Trustees*, 460 Mich 75, 84 n 8; 594 NW2d 491 (1999), quoting *Regents of Univ of Mich v Auditor General*, 167 Mich 444, 450; 132 NW 1037 (1911); see also *Brooks*, 224 Mich at 48 (recognizing that the University is a state agency within the executive branch of state government).

Given the unique character of the University Board of Regents and its exclusive authority over the management and control of its institution, we generally first consider whether the conduct being regulated is within the exclusive power of the University or whether it is properly the province of the Legislature. As this Court held in *Branum v Regents of Univ of Mich*, 5 Mich App 134; 145 NW2d 860 (1966):

> [T]he Legislature can validly exercise its police power for the welfare of the people of the State, and a constitutional corporation such as the Board of Regents of the University of Michigan can lawfully be affected thereby. The University of Michigan is an independent branch of the government of the State of Michigan, but it is not an island. [*Id*. at 138-139.]

Thus, for example, matters involving the University's management and control of its institution or property are properly within the Board of Regent's exclusive authority and the Legislature may not interfere; its promulgated laws must yield to the University's authority. See, e.g., *Federated Publications, Inc*, 460 Mich at 88 (holding that Michigan's Open Meetings Act is inapplicable to the internal operations of the University in selecting a president because it infringes on the University's constitutional power to supervise the institution). Conversely,

matters outside the confines of the University's exclusive authority to manage and control its property are the province of the Legislature and the University may be affected thereby. See, e.g., *Regents of Univ of Mich v Mich Employment Relations Comm*, 389 Mich 96, 108-110; 204 NW2d 218 (1973) (holding that the Michigan Public Employment Relations Act applies to the University and does not infringe on its constitutional autonomy so long as the scope of public employee bargaining under the Act does not infringe on the University's autonomy in the educational sphere); see also *WT Andrew Co Inc v Mid-State Surety Corp*, 450 Mich 655, 662, 668; 545 NW2d 351 (1996) (holding that the public works bond statute applied to the University as a valid "exercise of the Legislature's police power to protect interests of contractors and materialmen in the public sector" and promoted the state's general welfare).

Plaintiff contends that Article X has nothing to do with the management or control of university property or the promotion of the University's objectives, but instead "pick[s] away" at individual's constitutional rights "as they walk down the street." Plaintiff cites no authority in support of this claim and his complaint makes no allegation in this regard. That is, plaintiff did not claim that the University exceeded its constitutional authority in promulgating Article X. Instead, plaintiff's complaint makes a claim based on preemption pursuant to MCL 123.1102; thus, we turn to that matter.

Chapter 123 of the Michigan Complied Laws relates to local government affairs and "governs everything from the power of municipalities to operate a system of public recreation and playgrounds to their authority to establish and maintain garbage systems and waste plants." *Capital Area Dist Library (CADL) v Mich Open Carry, Inc*, 298 Mich App 220, 230; 826 NW2d 736 (2012). Beginning in 1990, chapter 123 was amended to also govern the regulation of firearms. Specifically, MCL 123.1102 provides:

> A local unit of government shall not impose special taxation on, enact or enforce any ordinance or regulation pertaining to, or regulate in any other manner the ownership, registration, purchase, sale, transfer, transportation, or possession of pistols, other firearms, or pneumatic guns, ammunition for pistols or other firearms, or components of pistols or other firearms, except as otherwise provided by federal law or a law of this state.

MCL 123.1101(b) defines "local unit of government" as "a city, village, township, or county." When a statute defines a term, that definition controls. *Haynes v Neshewat*, 477 Mich 29, 35; 729 NW2d 488 (2007). Plainly, a "university," as that term is commonly understood, is not a city, village, township, or county. The Legislature's intent is clearly expressed and, thus, must be enforced as written. *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). Therefore, as the Court of Claims held, the statute is not applicable to the University and, thus, does not preempt Article X.

But, plaintiff argues, the Court of Claims erred by failing to follow caselaw holding that the Legislature fully occupied the field of firearms regulation under MCL 123.1102. For example, plaintiff notes, in *Mich Coalition for Responsible Gun Owners v City of Ferndale*, 256 Mich App 401, 403; 662 NW2d 864 (2003), this Court considered the City of Ferndale's ordinance which prohibited "the possession or concealment of weapons in all buildings located in Ferndale that are owned or controlled by the city." This Court held that MCL 123.1102 "stripped local units of government of all authority to regulate firearms by ordinance or

otherwise . . . except as particularly provided in other provisions of the act and unless federal or state law provided otherwise." *Id*. at 413. But clearly that case involved an ordinance of the City of Ferndale that regulated firearms—a local governmental unit encompassed by the plain terms of MCL 123.1101(b); it did not involve an ordinance of a constitutional corporate body that is co-equal with the Legislature and an agency of the State.

The same analysis applies to plaintiff's reliance on *CADL*, 298 Mich App at 220. There, the Capital Area District Library was jointly established by the City of Lansing and Ingham County, and its operating board enacted a weapons policy banning all weapons from the library premises. *Id*. at 224-225. This Court held that "field preemption bars CADL's regulation of firearms." *Id*. at 230. In doing so, this Court acknowledged that the library did not fit within the definition of "local unit of government." *Id*. at 231. However, because the CADL was a quasi-municipal corporation created by two local units of government, this Court concluded that the library is a lower-level governmental entity subject to the principles of preemption with regard to the regulation of firearms. *Id*. at 231-233, 241. Plaintiff argues that the definition of "a local unit of government" should similarly be expanded to include the University. This argument ignores that the University was not created by two local units of government, but finds its origins in the Constitution as a corporate body that is co-equal with the Legislature and an agency of the State.[5]

Further, in *Mich Gun Owners, Inc v Ann Arbor Pub Sch*, ___ Mich App ___; ___ NW2d ___ (2016) (Docket No. 329632), this Court recently rejected a similar claim that MCL 123.1102 applied to the Ann Arbor Public Schools and prevented their policies banning the possession of firearms on school property as set forth in *CADL*, 298 Mich App at 220. See *id*.; slip op at 1-2. This Court noted that MCL 123.1102 only applies to a "local unit of government," which is defined under MCL 123.1101(b) as "a city, village, township, or county." *Id*.; slip op at 5. And, unlike the district library that was established by "two local units of government" in the *CADL* case, school districts, like the Ann Arbor Public Schools, "are not formed, organized or operated by cities, villages, townships or counties, but exist independently of those bodies." *Id*.; slip op at 5-6. Likewise, the University of Michigan is not formed, organized or operated by a city, village, township or county, but exists independently of those bodies.

---

[5] We note and reject our dissenting colleague's mischaracterization of the holding in *CADL* as "binding precedent" that we have "ignored" in violation of MCR 7.215(J)(1). The district library at issue in that case was considered an "inferior level of government" and a "quasi-municipal corporation" which could only exercise powers "expressly conferred by the Legislature." See *CADL*, 298 Mich App at 231-233. But, as discussed in our opinion, the University is not remotely similar to a district library created by two municipalities that specifically come within the ambit of MCL 123.1102. Moreover, contrary to the dissent's position, we do not consider the University's autonomy with regard to its regulation of dangerous weapons as tantamount to having the "authority to enact criminal laws." Rather, like numerous other regulations the University enacts pursuant to its constitutional mandate of "general supervision," the objective of Article X is to create a safe environment for its students in furtherance of its educational mission.

We conclude, again, that the Legislature clearly limited the reach of MCL 123.1102 to firearm regulations enacted by cities, villages, townships, and counties. MCL 123.1101(b). The University is not similarly situated to these entities; rather, it is a state-level, not a lower level or inferior level, governmental entity. More specifically, it is "a constitutional corporation of independent authority." *Federated Publications, Inc*, 460 Mich at 84 n 8. Plaintiff has failed to cite to a single case which held that the Board of Regents of the University of Michigan is a "lower-level governmental entity" or an "inferior level of government" subject to state law preemption. See *CADL*, 298 Mich App at 233. Thus, contrary to plaintiff's argument on appeal, this case is not "an ideal target" for the preemption analysis set forth in *People v Llewellyn*, 401 Mich 314; 257 NW2d 902 (1977)—that test presupposes that a "lower-level governmental entity" has enacted or seeks to enact a regulation in an area of law that the Legislature has regulated. See *CADL*, 298 Mich App at 233. But even if the University Board of Regents was subject to state law preemption, in *Mich Gun Owners, Inc*, ___ Mich App at ___; slip op at 6-9, this Court considered the *Llewellyn* factors and rejected the claim "that MCL 123.1102 impliedly preempts any school-district-generated firearm policy because the statute fully occupies the regulatory field." While in that case the regulations were promulgated by a public school district and in this case the regulations were promulgated by the University Board of Regents, the analysis of the *Llewellyn* factors would be sufficiently similar to reach the same result—the Legislature did not intend to completely preempt the field of firearm regulation.

In summary, MCL 123.1102 does not prohibit the University from regulating the possession of firearms on University property through the enactment of Article X; thus, Count II of plaintiff's complaint was properly dismissed for failure to state a cognizable claim for relief. Accordingly, the Court of Claims properly granted defendant's motion for summary disposition under MCR 2.116(C)(8) and dismissed plaintiff's entire complaint.

Affirmed. In light of the public question involved, defendant may not tax costs although the prevailing party. See MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Deborah A. Servitto

-10-